**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Bryan K. KALUNA, Defendant–Appellant.**

**Nos. 96–10527.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 3, 1997.

Decided Aug. 3, 1998.

Alexander Silvert (argued), First Assistant Federal Public Defender, Honolulu, Hawaii, for defendant-appellant.

Larry L. Butrick (argued), Assistant United States Attorney, Honolulu, Hawaii, for plaintiff-appellee.

Before: REINHARDT, LEAVY, and THOMAS, Circuit Judges.

Opinion by Judge REINHARDT; Concurrence by Judge THOMAS; Dissent by Judge LEAVY.

REINHARDT, Circuit Judge:

This case raises a number of important constitutional questions regarding the recently-enacted federal "three strikes" law, 18 U.S.C. § 3559(c) (1994).

Bryan K. Kaluna was convicted of bank robbery and conspiracy to commit bank robbery in violation of 18 U.S.C. § 2113(a) and 18 U.S.C. § 371.[1] Because he had been convicted on one prior occasion of first-degree robbery and on several others of second-degree robbery, the district court sentenced him to life in prison under the three-strikes statute. Kaluna now appeals his sentence, arguing (1) that the statute's recidivist sentencing scheme is facially unconstitutional; and (2) that, even if the sentencing law is constitutional in general, he has only two valid "strikes," either because (a) the statute must be construed in a manner that excludes his other convictions or (b) the statutory burden-shifting provision used to establish his third strike is unconstitutional. We reject both his facial challenge to the three-strikes law generally and his statutory construction argument. We agree, however, that the statutory burden-shifting provision,

---

1. We affirm Kaluna's conviction in a memorandum disposition filed concurrently herewith.

which requires *defendants* to prove by clear and convincing evidence that in the commission of certain prior offenses (i) a dangerous weapon was *not* used or threatened to be used and (ii) death or serious bodily injury did *not* occur, violates due process.

## I

We first consider Kaluna's general constitutional challenges to the "three strikes" law. The statute provides in relevant part that "[n]otwithstanding any other provision of law, a person who is convicted ... of a serious violent felony shall be sentenced to [mandatory] life imprisonment" if he has been convicted "on prior occasions ... of ... 2 or more serious violent felonies." 18 U.S.C. § 3559(c)(1).

Kaluna argues that the three-strikes statute violates five constitutional principles: (1) double jeopardy; (2) the separation of powers; (3) the Ex Post Facto Clause; (4) the prohibition against cruel and unusual punishment; and (5) the right to effective assistance of counsel. We have not had occasion to address these arguments with regard to the federal three-strikes statute, but three other circuits have rejected various challenges to the statute's general constitutionality. *See United States v. Rasco,* 123 F.3d 222 (5th Cir.1997), *cert. denied,* — U.S. —, 118 S.Ct. 868, 139 L.Ed.2d 765 (1998); *United States v. Washington,* 109 F.3d 335, 337–38 (7th Cir.), *cert. denied,* — U.S. —, 118 S.Ct. 134, 139 L.Ed.2d 82 (1997); *United States v. Farmer,* 73 F.3d 836, 839–41 (8th Cir.), *cert. denied,* 518 U.S. 1028, 116 S.Ct. 2570, 135 L.Ed.2d 1086 (1996). We agree with these circuits, and with the district court, that the three-strikes statute's recidivist sentencing scheme, harsh and inflexible as it may be, is facially constitutional in general.

■ First, Kaluna contends that the three-strikes statute violates the Double Jeopardy Clause because it imposes multiple punishment for the same offenses. Specifically, he argues that he has already served his punishment for his previous two "strikes," and he cannot be punished again for them by counting them against him in the instant sentence. It is true that the "Double Jeopardy Clause protects against ... the actual imposition of two punishments for the same offense." *Witte v. United States,* 515 U.S. 389, 115 S.Ct. 2199, 2204, 132 L.Ed.2d 351 (1995). But although the three-strikes statute might seem to violate this principle, the Supreme Court has long since determined that recidivist statutes do not violate double jeopardy because "the enhanced punishment imposed for the later offense 'is not to be viewed as either a new jeopardy or additional penalty for the earlier crimes,' but instead as 'a stiffened penalty for the latest crime, which is considered to be an aggravated offense because a repetitive one.'" *Id.* 115 S.Ct. at 2206 (quoting *Gryger v. Burke,* 334 U.S. 728, 732, 68 S.Ct. 1256, 92 L.Ed. 1683 (1948)); *see also Spencer v. Texas,* 385 U.S. 554, 559–60, 87 S.Ct. 648, 17 L.Ed.2d 606 (1967); *Moore v. Missouri,* 159 U.S. 673, 16 S.Ct. 179, 40 L.Ed. 301 (1895). Thus, Kaluna's argument cannot prevail.

■ Second, Kaluna contends that the three-strikes statute violates the fundamental constitutional principle of separation of powers because it impermissibly increases the discretionary power of prosecutors while stripping the judiciary of *all* discretion to craft sentences. Alternately, Kaluna argues that this court should, in order to avoid constitutional difficulties, construe the statute to permit judges to apply the statute at their discretion. Again, we are compelled by precedent to reject both arguments. The Supreme Court has stated unequivocally that "Congress has the power to define criminal punishments without giving the courts any sentencing discretion." *Chapman v. United States,* 500 U.S. 453, 467, 111 S.Ct. 1919, 114 L.Ed.2d 524 (1991); *see also Mistretta v. United States,* 488 U.S. 361, 364, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989) (upholding the constitutionality of the federal sentencing guidelines in part because "the scope of judicial discretion with respect to a sentence is subject to congressional control"). Furthermore, the legislative history of the law leaves no doubt that Congress intended it to require mandatory sentences. *See* 103 Cong. Rec. S12,525 (daily ed. Aug. 25, 1994) (statement of Sen. Daschle) (stating that the three-strikes law "will require that Federal judges hand down mandatory life sentences"); *Id.* at S12,12544 (statement of Sen. Lautenberg) (emphasizing that under the three-strikes

law, three-time offenders are "put away for life.... And no ifs, ands or buts about it."). The statute itself uses the words "mandatory" and "shall." In any event, we cannot narrowly construe a law to avoid constitutional infirmity in this area because, given the principles previously announced by the Supreme Court, no constitutional question exists.

■ Third, Kaluna contends that the three-strikes statute violates the Ex Post Facto Clause because it changes the legal consequences of his prior bad acts. This contention also lacks merit. The Supreme Court and this court uniformly have held that recidivist statutes do not violate the Ex Post Facto Clause if they are "on the books at the time the [present] offense was committed." *United States v. Ahumada–Avalos*, 875 F.2d 681, 683–84 (9th Cir.1989) (per curiam); *see also Weaver v. Graham*, 450 U.S. 24, 30, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981). This statute was enacted in 1994 and Kaluna committed the instant offense in 1995.

■ Fourth, Kaluna argues that the three-strikes statute violates the proportionality guarantee of the Eighth Amendment. *See* U.S. Const. amend. VIII ("cruel and unusual punishments [shall not be] inflicted"). Supreme Court precedent once again forecloses his claim. In its most recent pronouncement on the subject, the Court held that "the eighth amendment 'forbids only extreme sentences that are grossly disproportionate to the crime.'" *United States v. Bland*, 961 F.2d 123, 129 (9th Cir.1992) (quoting *Harmelin v. Michigan*, 501 U.S. 957, 1001, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991) (Kennedy, J., joined by O'Connor and Souter, JJ., concurring) (constituting the holding of the Court)). Moreover, while in evaluating the proportionality of a sentence, courts "must focus on the principal felony— the felony that triggers the life sentence," *Solem v. Helm*, 463 U.S. 277, 290, 296 n. 21, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983), they must also recognize that legislatures may punish recidivists more severely than first-time offenders. *Id.* at 296, 103 S.Ct. 3001. Because the statute restricts its application to instances where both the defendants' primary and past convictions are "serious violent felonies," the Court's precedent makes it clear that Kaluna's punishment for bank rob-

bery is not sufficiently disproportionate to contravene the Eighth Amendment. *See, e.g., Harmelin*, 501 U.S. at 994–96, 111 S.Ct. 2680 (upholding life imprisonment for first offense of possessing 672 grams of cocaine); *Rummel v. Estelle*, 445 U.S. 263, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980) (upholding life sentence imposed after third nonviolent felony conviction).

■ Finally, Kaluna claims that he was deprived of the right to effective assistance of counsel because he was never advised that his guilty pleas to prior offenses could later constitute "strikes" leading to mandatory life imprisonment. Indeed, the three-strikes statute did not exist at the time of his guilty pleas to prior crimes. Following convention, however, we affirm the district court's determination to dismiss this claim without prejudice because it is properly raised through habeas corpus proceedings, not direct review. *See Custis v. United States*, 511 U.S. 485, 114 S.Ct. 1732, 1739, 128 L.Ed.2d 517 (1994) (ineffective assistance claims under recidivist statutes should be brought collaterally, not in sentencing procedures).

## II

Having held the three-strikes law generally constitutional, we reach Kaluna's second contention. He argues that, even if the sentencing law is generally constitutional, he has only two valid "strikes" because either (1) the provision that affords the basis for his third strike must be construed in a manner that excludes his other convictions or (2) the statutory burden-shifting procedure used to establish his third strike is unconstitutional. We reject Kaluna's first contention but agree with the second and, therefore, invalidate the relevant statutory provisions and vacate his sentence.

### A

Provided the government follows the appropriate statutory procedures, courts are required under the three-strikes statute to impose life sentences on defendants who have committed three "serious violent felonies." The statute defines serious violent felonies, or "strikes," under two different

schemes. First, it enumerates twelve specific crimes, such as murder, rape, and kidnapping, that automatically qualify as serious violent felonies. *See* 18 U.S.C. § 3559(c)(2)(F)(i). Second, it sets forth a group of crimes that essentially are presumed to be serious violent felonies—namely, robbery and arson, *see id.,* and certain "unenumerated" felonies that carry the same presumption. The latter category consists of:

> any other offense punishable by a maximum term of imprisonment of 10 years or more that has as an element the use, attempted use, or threatened use of physical force against the person of another or that, by its nature, involves a substantial risk that physical force against the person of another may be used in the course of committing the offense.

18 U.S.C. § 3559(c)(2)(F)(ii). In the next subparagraph, however, the statute makes it clear that only certain acts of robbery and only certain unenumerated offenses are so "serious" or "violent" that they are to be treated as serious violent felonies. Section 3559(c)(3) provides that in order to "qualify" as a strike, a conviction for robbery or an unenumerated offense also must (i) involve the use, or threatened use, of a dangerous weapon or (ii) result in death or serious bodily injury. It also imposes on the defendant the burden of proving by clear and convincing evidence that these statutory conditions that qualify the robbery or other unenumerated offense for treatment as a serious violent felony were *not* met. The provision reads as follows:

> **(A) Robbery in certain cases.**—Robbery, an attempt, conspiracy, or solicitation to commit robbery; or an offense described

in paragraph (2)(F)(ii) shall not serve as a basis for sentencing under this subsection if the defendant establishes by clear and convincing evidence that—

> (i) no firearm or other dangerous weapon was used in the offense and no threat of use of a firearm or other dangerous weapon was involved in the offense; and
>
> (ii) the offense did not result in death or serious bodily injury ... to any person.

18 U.S.C. § 3559(c)(3).[2]

At the time of sentencing, the district court considered whether six of Kaluna's prior convictions counted as strikes: the instant offense under § 2113(a), a first-degree Hawaii state robbery conviction,[3] and four second-degree Hawaii state robbery convictions. Kaluna raised little objection to terming the first two convictions strikes, but argued strenuously that, since under Hawaii law second-degree robbery does not require the use of a dangerous weapon,[4] either none of his second-degree robbery convictions counted as strikes under the statute or, if they did, then the relevant statutory provisions were unconstitutional. He declined to offer any direct evidence regarding the facts or circumstances of any of his Robbery II convictions, choosing instead to rely solely on official court documents to argue that the offenses do not qualify under the statute and that the statutory burden-shifting provision is unconstitutional.

The district court rejected each of Kaluna's arguments and ruled (1) that all six convictions qualified as strikes and (2) that this application of the statute was constitutional. It held specifically that the instant offense was strike one; that Kaluna's first-degree

---

2. The statute also contains a similar provision with respect to arson convictions. *See* 18 U.S.C. § 3559(c)(3)(B). That provision is not directly at issue here.

3. In Hawaii first-degree robbery involves the use, or the threat of use, of force while armed with a dangerous instrument in the course of committing theft. *See* Haw.Rev.Stat. § 708–840(1).

4. Hawaii defines second-degree robbery as follows:

> (1) A person commits the offense of robbery in the second degree if, in the course of committing the theft:

> (a) He uses force against the person of anyone present with the intent to overcome that person's physical resistance or physical power of resistance;
>
> (b) He threatens the imminent use of force against the person of any one who is present with the intent to compel acquiescence to the taking of or escaping with the property; or
>
> (c) He recklessly inflicts serious bodily injury upon another.

Haw.Rev.Stat. § 708–841.

robbery conviction was strike two; and that a second-degree robbery conviction for the robbery of Bill's Bakery was strike three. Regarding the critical third strike, the court concluded that the elements in Hawaii's Robbery II statute satisfied the category of "other offenses" described in § (2)(F)(ii)[5] and that, "[e]qually significant," Kaluna "failed to carry his burden under 18 U.S.C. § 3559(c)(3) to preclude the use of [the Bill's Bakery robbery] as a basis for sentencing." The court then noted that each of the other three second-degree robbery convictions also qualified as strikes, for the same reasons.

On appeal, Kaluna concedes that the instant robbery conviction and his prior conviction for first-degree robbery both constitute strikes. Both parties also agree that, since second-degree robbery "involves a substantial risk that physical force against the person of another may be used," Kaluna's "third" conviction (the Bill's Bakery robbery)[6] satisfies the three-strikes statute's initial elements required for "other [qualifying] offense[s]." It is, in short, an unenumerated presumptively serious violent felony. *See* § (2)(F)(ii). At this point, however, the parties part company. Kaluna first argues that his second-degree robbery conviction cannot satisfy the statute's additional requirement that a dangerous weapon have been used or serious bodily injury have been caused because the provision must be construed "categorically." In the alternative, he asserts that the statute's burden-shifting provision violates due process. The government disagrees with both arguments.

**B**

 We agree with the government that § (2)(F) and § (3)(A), read together, are clear on their face and cannot be given the construction Kaluna suggests. When the terms of a statute are unambiguous, we can-

not alter their plain meaning. *Demarest v. Manspeaker*, 498 U.S. 184, 190, 111 S.Ct. 599, 112 L.Ed.2d 608 (1991); *United States v. Valencia–Andrade*, 72 F.3d 770, 774 (9th Cir. 1995). In this case, if Congress had not explicitly required a determination that no dangerous weapon "was used in the offense" or that "the offense did not result" in serious bodily injury, § (3)(A), we might be able to entertain Kaluna's suggestion that we adopt a "categorical" approach to the qualifying offenses. *See Taylor v. United States*, 495 U.S. 575, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990) (discussing categorical approach). Given the statutory language, however, we are not free to do so. The statute, in explicit terms, requires courts to look *not* to the elements of the statute under which a defendant was convicted, but rather to the specific facts underlying the particular conviction. In short, the words of the three-strikes statute make it clear that Congress intended courts to employ a fact-specific, case-by-case approach when determining whether prior convictions for robbery and the unenumerated offenses constitute serious violent felonies, or "strikes."

**C**

 Since the relevant provisions of the statute are susceptible to only one possible construction—namely, that courts must employ a fact-specific approach as to whether particular convictions constitute strikes—we are compelled to decide whether the burden-shifting provision comports with due process. Kaluna argues that the provision is unconstitutional because it requires *him* to prove that the facts surrounding his prior conviction do *not* satisfy one of the statute's prerequisites for a strike and because its "clear and convincing evidence" standard is, in any event, too high. Thus, the specific issue we must

---

**5.** The district court also alternatively held that Hawaii's second-degree robbery statute satisfied the specific definition of "robbery" set forth in § (2)(F)(i). We agree with the district court's initial determination, and with government's, that the statute falls under the category of "other offenses," thereby satisfying one prong of the three-strikes statute's inquiry.

**6.** Kaluna's "official" third strike, according to the district court's analysis, is the Bill's Bakery

robbery. Because each of the other convictions was a second-degree robbery conviction in which Kaluna failed to establish by clear and convincing evidence that a gun was not used or threatened to be used, either each one of these convictions and the Bill's Bakery conviction qualifies as a strike, or none of them does. Thus, from this point forward, we need consider explicitly only the validity of the Bill's Bakery strike.

decide is whether, once Congress has determined that certain offenses constitute "serious violent felonies" and therefore "qualify" as strikes (leading to a sentence enhancement) only if a dangerous weapon was used or serious bodily injury resulted, it may shift the burden to the defendant to disprove that qualifying component of the statute, and, if so, whether it may require him to do so by means of clear and convincing evidence.[7]

This dispute presents an issue of first impression in this circuit. In *United States v. Morrison*, 113 F.3d 1020 (9th Cir.), *cert. denied*, —— U.S. ——, 118 S.Ct. 583, 139 L.Ed.2d 421 (1997), we held that the defendant was barred from arguing that the statute's burden-shifting procedure was unconstitutional because he was challenging a "strike" based on a guilty plea to both robbery *and* a statute prohibiting firearm use. We explained that, under such circumstances, the provision's "burden of proof [was] . . . irrelevant" because, under res judicata principles, the defendant did "not have the right to rebut facts necessarily adjudicated by the earlier judgment," *id.* at 1021–22.

We found it unnecessary, therefore, to reach the question whether the statute violated due process by imposing its burden-shifting provision as the means of establishing the "dangerous weapon" element of a robbery-strike. *Id.* at 1021. This case squarely presents that issue. In none of the criminal judgments encompassing Kaluna's second-degree robbery convictions (the convictions, and particularly Bill's Bakery, that would constitute his third strike), was Kaluna convicted of an offense that necessarily included the use, or threatened use, of a dangerous weapon or necessarily resulted in death or serious bodily injury; thus, the district court was required to invoke the statute's fact-finding procedure—its burden-shifting mechanism—in order to establish his third strike.[8]

Our inquiry into the provision's constitutionality consists of two steps. First, we consider whether § (3)(A)'s "dangerous weapon" or "serious bodily injury" component constitutes an "essential statutory ingredient" or whether it is an "exception" to the statute's reach—and thus an "affirmative

---

7. Both parties agree that this is an accurate description of the statute and the issue it presents. At oral argument, the government described the statute this way:

> THE COURT: You can only impose the penalty if it's done with the use of a gun or another dangerous weapon?
> MR. BUTRICK: That is correct, your honor. But [showing that there was a threatened use of force] is enough to start the process rolling.
> THE COURT: You start the process rolling and then the burden of proof is on the defendant.
> MR. BUTRICK: Absolutely, your honor. That's exactly how it [works].
> . . . .
> THE COURT: You can't have a lifetime sentence unless [the offense was committed with a gun or a dangerous weapon], right?
> MR. BUTRICK: I understand, your honor. That is correct.

8. In the Bill's Bakery robbery, Kaluna was originally charged with first-degree robbery while armed with a handgun. He eventually pleaded guilty, however, to "ROBBERY IN THE *SECOND* DEGREE, committed in the manner and form set forth in the indictment" (emphasis added). This conviction does not fall within *Morrison*'s rule forbidding defendants from challenging prior convictions when those convictions necessarily required the use of a dangerous weapon. Second-degree robbery in Hawaii does not require the use of a dangerous weapon. *See*

*supra* n. 4. Thus, while Kaluna's guilty plea "comprehended all of the factual and legal elements *necessary* to sustain a binding, final judgment of guilt," *United States v. Broce*, 488 U.S. 563, 569, 109 S.Ct. 757, 102 L.Ed.2d 927 (1989) (emphasis added), the use of a dangerous weapon was not one of those "necessary" elements. *See Morrison*, 113 F.3d at 1022 (restricting its application to "facts necessarily adjudicated by the earlier judgment"). By pleading to Robbery II, Kaluna admitted only "all factual allegations in the indictment" necessary to sustain a *second-degree* robbery conviction. *United States v. Benson*, 579 F.2d 508, 509 (9th Cir.1978). The reference to "manner and form set forth in the indictment" appears to be a description of an act of "Second Degree Robbery" contained within the indictment and thus to acknowledge only the conduct relevant and material to that offense rather than all descriptive statements in the indictment, whatever their relevance or materiality. At the very least, the acknowledgment is highly ambiguous. Moreover, when the defendant has pleaded guilty to a lesser offense, the Supreme Court has indicated that it is, given the lack of a record, "unfair to impose a sentence enhancement as if the defendant had pleaded guilty to" the greater offense. *Taylor v. United States*, 495 U.S. 575, 602, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990). Finally, it is clear from the record that the district court actually shifted the burden of proof to Kaluna when determining that the Bill's Bakery robbery, and all other second-degree robberies, qualified as strikes.

defense." We conclude that it is an essential ingredient—in other words, a statutory element. Second, we consider whether the burden of proof imposed by the three-strikes statute regarding this element comports with due process. We hold that it does not.

### 1

Whether the provision at issue prescribes an element or an exception is of critical importance. The government ordinarily must carry the burden of proof regarding elements, or facts that are "essential" to a criminal statute's application. *See, e.g., Almendarez–Torres v. United States,* — U.S. —, —, 118 S.Ct. 1219, 1228, 140 L.Ed.2d 350 (1998); *McMillan v. Pennsylvania,* 477 U.S. 79, 85, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986); *Patterson v. New York,* 432 U.S. 197, 215, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977); *Mullaney v. Wilbur,* 421 U.S. 684, 692–96, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975). On the other hand, it is a well established rule of statutory construction that "a defendant who relies upon an exception to a statute ..., whether in the same section of the statute or elsewhere, has the burden of establishing and showing that he comes within that exception." *United States v. Freter,* 31 F.3d 783, 788 (9th Cir.) (internal quotation marks omitted); *accord United States v. Gravenmeir,* 121 F.3d 526, 528 (9th Cir.1997); *Walker v. Endell,* 850 F.2d 470, 472–73 (9th Cir.1987).

While the question of essential fact versus exception may arise regarding either a statute establishing a criminal offense or a statute prescribing a criminal sentence, the manner in which courts decide whether a clause constitutes an essential fact or an affirmative defense is the same for both kinds of criminal statutes. *See McMillan,* 477 U.S. at 85, 91, 106 S.Ct. 2411 (stating that sentencing laws are "differen[t] in degree" than statutes establishing offenses, but indicating that the same general principles "control[ ]"). As the Sixth Circuit has explained, "[t]he thrust of an inquiry under *Mullaney* and *Patterson* is whether the [legislature] has defined the elements of the crime so as to presume a fact essential to guilt and then compelled the accused to negate that element of the crime." *Carter v. Jago,* 637 F.2d 449, 455 (6th Cir. 1980).[9]

We have never established a specific test for deciding whether a particular clause must be considered an element or an affirmative defense, but we have consistently looked to three factors: (1) the form of the statute, particularly whether the clause at issue appears in a separate provision; (2) the breadth of the alleged "exception" in relation to the overall provision; and (3) the ease with which the respective parties can present evidence to prove the matter, especially whether one party might be forced to prove a negative. *See Gravenmeir,* 121 F.3d at 528; *Freter,* 31 F.3d at 788; *United States v. Hester,* 719 F.2d 1041, 1042 (9th Cir.1983); *see also United States v. Durrani,* 835 F.2d 410, 420–21 (2d Cir.1987) (adopting test that considers essentially the same factors). The Supreme Court directs us also to consider a fourth factor when the historical facts permit such an analysis: whether the clause involves a matter that is traditionally an element of a crime (or sentencing enhancement) or traditionally constitutes an affirmative defense. *See, e.g., Mullaney,* 421 U.S. at 692–96, 95 S.Ct. 1881 (invalidating statute that shifted burden of proof regarding malice in murder statute largely because malice is traditionally an element of murder); *Leland v. Oregon,* 343 U.S. 790, 796–97, 72 S.Ct. 1002, 96 L.Ed. 1302 (1952) (holding that states may require a defendant to prove insanity beyond a reasonable doubt primarily because insanity has always been an affirmative defense). While

---

9. We note that two opinions issued by the Supreme Court this Term which deal with the question whether recidivism enhancements must be considered elements of the *criminal offense* do not apply to this case. *See Monge v. California,* — U.S. —, 118 S.Ct. 2246, 141 L.Ed.2d 615 (1998); *Almendarez–Torres v. United States,* — U.S. —, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998). In *Almendarez–Torres,* the Court addressed the question whether a statutory provision established an element of the offense or a sentence enhancement; while in *Monge,* the Court, in considering whether double jeopardy principles apply to a sentencing proceeding, rejected the argument that the provision at issue established an element of the offense. In the case of the federal three strikes law, it is clear that prior convictions do not constitute an element of the offense and that Congress intended that prior offenses be established in a sentencing proceeding. Kaluna does not contend that due process requires otherwise.

in our four earlier cases there was no relevant history that permitted application of the fourth factor, that factor is of considerable importance here.[10]

A careful analysis of § (2)(F) and § (3)(A) reveals that the latter's "dangerous weapon" or "death or serious bodily injury" provision represents an additional "element" defining whether robberies or unenumerated offenses qualify as serious violent felonies, and does not merely constitute an exception or affirmative defense. First, while it is true that the "dangerous weapon"/ "serious bodily injury" requirement is in a separate provision from the definition of robbery and unenumerated offenses, this fact is not talismanic. *See, e.g., Patterson*, 432 U.S. at 210, 97 S.Ct. 2319; *Freter*, 31 F.3d at 788. If it were, Congress could always shift the burden of proof regarding elements of a crime simply by placing them in separate provisions and calling them "exceptions." A legislature cannot, for example, define murder as the unlawful killing of another person and then shift the burden of proof to the defendant to establish that he did not act with malice aforethought. *See Mullaney*, 421 U.S. at 703–04, 95 S.Ct. 1881 (striking down such a law). We, therefore, must consider the other three factors to determine whether Congress enacted a legitimate exception or a thinly disguised element—in other words, whether the statute requires the court to engage in unlawful burden-shifting.

Each of the other three factors strongly supports the conclusion that § (3)(A) sets forth an actual element of the statute. First, crimes in which (i) a dangerous weapon is used or threatened or (ii) death or serious bodily injury results constitute a sizeable percentage of crimes that have as an element the use of force, the threatened use of force, or a substantial risk of the use of force. We have previously held that statutory provisions constituted exceptions only when they excluded from the statute's reach comparatively narrow ranges of conduct. *See Gravenmeir*, 121 F.3d at 528 (holding that a "lawful transfer or lawful possession of a machinegun that was lawfully possessed before" May 19, 1986 is an exception to the crime of transferring or possessing a machinegun); *Freter*, 31 F.3d at 787–88 (holding that a federally permitted release is an exception to the crime of failing to notify the appropriate agency of hazardous substance releases); *Hester*, 719 F.2d at 1042 (holding that Indian status is an exception to statute allowing prosecutions of non-Indians for crimes committed in Indian country against Indians). Other circuits are in accord. *See, e.g., Durrani*, 835 F.2d at 421 (holding a provision an affirmative defense in part because the statutory prohibition was broad and the exception was narrow); *United States v. Chodor*, 479 F.2d 661, 663–64 & n. 2 (1st Cir.1973) (same). The breadth of the conduct covered by § (3)(A) stands in stark contrast to the strictly limited, discrete slices of conduct we have previously recognized as exceptions.

Next, reading § (3)(A) as an exception would require *the defendant* to prove the negative (by clear and convincing evidence) with respect to the use or threatened use of a gun or the occurrence of death or serious bodily injury. Proving the absence of these circumstances, like proving the absence of any set of facts, is exceedingly difficult. Courts have been particularly hesitant to require defendants to prove exculpatory facts that are beyond their unique ability to establish. Indeed, we have condoned such a requirement only when the defendant had some particular ability to prove the necessary facts.[11] In *Freter*, for example, when we held that the defendant could be required to prove that he owned a permit allowing hazardous substance releases, we explained that "[i]t is far easier for the defendant to present evidence that the release is federally

---

10. It is also worth noting that the three-strikes law was passed by Congress, so the Court's directive to give deference to the principles of federalism and the states' interest in defining their own criminal statutory schemes does not obtain in this case. *Compare McMillan*, 477 U.S. at 85–86, 106 S.Ct. 2411 (deferring to states); *Patterson*, 432 U.S. at 201–02, 97 S.Ct. 2319 (same).

11. Even then, it is not always permissible to shift the burden to the defendant. For instance, "although intent is typically considered a fact peculiarly within the knowledge of the defendant, this does not, as the [Supreme] Court long has recognized, justify shifting the burden to him." *Mullaney*, 421 U.S. at 702, 95 S.Ct. 1881.

permitted under one of these statutes than for the government to produce evidence that the release is not permitted under any of them." 31 F.3d at 788; *see also Gravenmeir,* 121 F.3d at 528 (emphasizing fact that it is "easier" for defendants to show whether they obtained machinegun before 1986; *Hester,* 719 F.2d at 1043 ("It is far more manageable for the defendant to shoulder the burden of producing evidence that he is a member of a federally recognized tribe than it is for the Government to produce evidence that he is not a member of any one of the hundreds of such tribes."). Likewise, defendants have traditionally been required to prove insanity claims because knowledge of their mental states is uniquely within their control. *See Leland,* 343 U.S. at 796–97, 72 S.Ct. 1002. It is far easier, however, for the government to prove the use or presence of a dangerous weapon or that death or serious bodily injury resulted than it is for the defendant to demonstrate the opposite, particularly in connection with crimes that may have occurred a number of years ago. This is in large part because the government, with its ready access to official files and records, and its superior ability to locate or track down individuals, is in a better position to obtain the testimony of victims of, or percipient-witnesses to, past offenses. Furthermore, the facts at issue are the type that the government regularly endeavors to prove in ordinary criminal cases where it customarily is required to carry its burden of showing that specific events happened.

Finally, we find it highly significant that the use of a firearm or dangerous weapon is traditionally an element of an offense or of a sentencing enhancement—an element that must be proved by the government. *See, e.g.,* 18 U.S.C. § 111(b) (enhancing penalty for assault against federal officers when gov-

ernment establishes use of a dangerous weapon or serious bodily injury); 18 U.S.C. § 924(c) (criminalizing the use of firearm in relation to a drug offense); United States Sentencing Commission, Guidelines Manual § 2D1.1(b)(1) (1997) (providing sentence enhancement for possession of a dangerous weapon during certain drug offenses); *McMillan,* 477 U.S. at 91, 106 S.Ct. 2411 (holding that state must prove use of a firearm in sentence enhancement statute). In fact, the very federal statutes referred to in the three-strikes law, which define the elements of robbery, provide for a separate—and more serious—crime and sentence if the government proves that the defendant used a dangerous weapon. *See* 18 U.S.C. §§ 2113(d) & 2118(c)(1).[12] And, as Hawaii's statutes demonstrate, armed robbery is traditionally a different and far more serious state crime than simple robbery. *Compare supra* n. 3 (defining first-degree robbery) *with* n. 4 (defining second-degree robbery); *see also United States v. Mancusi,* 448 F.2d 233, 235 (2d Cir.1971) (emphasizing same distinction in New York law). In Hawaii, as in other states, the more serious (and more violent) crime is proven when the prosecutor carries the burden of establishing that a dangerous weapon was used. Thus, it is difficult to escape the conclusion that § (3)(A) shifts the burden of proof to the defendant to prove something that, prior to the three-strikes law, the government was traditionally required to prove for purposes of both conviction and sentence enhancement.

The only exception to the practice of expressly defining the use of a dangerous weapon as an element of a statute appears in a provision known as the "safety valve" law, which was passed in the same act as the three-strikes law,[13] United States Sentencing

---

**12.** Subsection 2113(d) reads in full:

Whoever, in committing, or in attempting to commit, any offense defined in subsections (a) and (b) of this section [bank robbery], assaults any person, or puts in jeopardy the life of any person *by the use of a dangerous weapon* or device, shall be fined not more than $10,000 or imprisoned not more than twenty-five years, or both.

18 U.S.C. § 2113(d) (emphasis added). Subsection 2118(c)(1) reads in full:

Whoever in committing any offense defined in subsection (a) or (b) [robbery involving con-

trolled substances] assaults any person, or puts in jeopardy the life of any person, *by the use of a dangerous weapon* or device 'shall be fined not more than $35,000 and imprisoned not more than twenty-five years.

18 U.S.C. § 2118(c)(1) (emphasis added).

**13.** Both provisions were passed in the Violent Crime Control and Law Enforcement Act of 1994, Pub.L. 103–322, 108 Stat. 1796 (1994). *See id.* § 70001 (safety valve provision); § 80001(a) (three-strikes law).

Guideline § 5C1.2, 18 U.S.C. § 3553(f). That provision allows defendants convicted of certain nonviolent drug offenses to receive a *downward* departure from the mandatory minimum if they prove by a preponderance of the evidence that they meet five conditions, one being that they did not use a dangerous weapon in the commission of the offense. *See United States v. Ajugwo*, 82 F.3d 925, 929 (9th Cir.1996), *cert. denied*, —— U.S. ——, 117 S.Ct. 742, 136 L.Ed.2d 680 (1997).[14] The safety-valve provision, however, is easily distinguished from the mandatory lifetime provision of the three-strikes statute. The former, in contrast to the latter, applies only to events that occurred during the offense for which the defendant is currently being tried. All of the witnesses and evidence are already present at the proceedings, making it far easier for the defendant to prove what happened. More important, the safety valve provision permits a *reduction* in the sentence ordinarily imposed for the offense, while the "dangerous weapon" requirement in the three-strikes statute mandates a significant *enhancement*—a substantial increase in the punishment. In other words, Congress viewed the safety-valve requirements of § 5C1.2 as "mitigating" factors, *see Ajugwo*, 82 F.3d at 926; the reduced sentence is relief that the defendant may obtain by proving that he is entitled to receive it—by establishing, *inter alia*, that he did not use a dangerous weapon. If the defendant fails to carry his burden, he simply receives the normal sentence for the offense he committed. By contrast, under the three-strikes statute, if a defendant fails to meet § (3)(A)'s burden regarding the use of a dangerous weapon, an additional penalty is imposed—a greatly *enhanced* sentence. It is only the three-strikes statute, therefore, that "*presume[s]* ... [the] essential fact," *McMillan*, 477 U.S. at 83, 106 S.Ct. 2411 (quotation marks omitted and emphasis added), of the use of a dangerous weapon and then bases *increased punishment* on that presumption.

In sum, we conclude that § (3)(A) sets forth an element, or essential ingredient, of the three-strikes law's enhancement provision—an element that qualifies certain robberies and other unenumerated offenses as serious violent felonies, or strikes. Under the statute, only armed robberies and other armed offenses, or threatened armed robberies or other armed offenses, or robberies and other offenses that result in death or serious bodily injury, constitute strikes that subject the defendant to life imprisonment. Yet the statute requires the defendant to prove that he was not armed and did not cause any such injury; that he did not commit the type of crime that the three-strikes law encompasses; that the offense he committed does not qualify as a strike. There can be no doubt that proof of (1) the use or threat to use a dangerous weapon or (2) the occurrence of death or serious bodily injury is proof of an element necessary to the classification of the offense as a strike. What the three-strikes statute does, therefore, is to presume the existence of the element and then require the defendant to *dis*prove its existence by clear and convincing evidence.

2

We now turn to the second part of our inquiry: whether the burden of proof allocated by Congress regarding the dangerous weapon/death or serious injury element comports with due process.

For starters, it is apparent that if the provisions of the three-strikes statute that are at issue here applied to the guilt phase of a prosecution, they would be unconstitutional. The Supreme Court made clear in *Patterson* and *Mullaney* that a statute proscribing criminal conduct violates due process whenever it "shift[s] the burden of proof to the defendant by presuming [an] ingredient [of an offense] upon proof of the other elements of the offense." *Patterson*, 432 U.S. at 215, 97 S.Ct. 2319 (holding that statute requiring defendant to prove that he suffered from extreme emotional disturbance did not run afoul of this rule because that was an

**14.** Guideline § 5C1.2 lists five requirements that the defendant must prove to qualify for its "safety valve." In *Ajugwo*, we actually considered only the fifth factor, the requirement that the defendant provide the government with all of his information concerning the crime, but we stated more generally that under the statute the defendant had "the burden of proving, by a preponderance of the evidence, that she qualified for the safety valve provision." 82 F.3d at 929. No constitutional challenge was made to the allocation of the burden of proof.

affirmative defense to offense); *see also Mullaney*, 421 U.S. at 692–704, 95 S.Ct. 1881 (holding that statute requiring defendant to prove that he acted in heat of passion to avoid murder conviction violated due process because malice aforethought is element of murder); *cf. In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970) (holding that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged"). The burden regarding all such "ingredients" must rest with the prosecution.

While neither the Supreme Court nor this court has ever been confronted directly with the question of the constitutionality of a *sentence enhancement* statute that shifts the burden of proof of an "essential ingredient" to the defendant, the Court's recent sentencing decisions provide considerable guidance in this regard. Those decisions strongly suggest that the three-strikes law's burden-shifting scheme must be held unconstitutional.

It has long been settled that due process protections apply generally to recidivist sentencing statutes. *See Specht v. Patterson*, 386 U.S. 605, 610, 87 S.Ct. 1209, 18 L.Ed.2d 326 (1967). Furthermore, the Court recently has warned, with respect to sentencing enhancements based on prior offenses, that even when the government has the burden of proof "the practical difficulties and potential unfairness of a factual approach are daunting." *Taylor*, 495 U.S. at 601, 110 S.Ct. 2143. The Court has never had occasion, however, to prescribe formally any minimum burden of proof that applies to essential ingredients of qualifying offenses in recidivist sentencing enhancement statutes. *See Almendarez-Torres*, 118 S.Ct. at 1223.

The Court nevertheless recently reaffirmed the rule that "application of the preponderance of the evidence standard at sentencing generally satisfies due process." *United*

*States v. Watts*, 519 U.S. 148, 117 S.Ct. 633, 637, 136 L.Ed.2d 554 (1997) (per curiam); *see also McMillan*, 477 U.S. at 91–92, 106 S.Ct. 2411.[15] We, along with other circuits, have understood the Court's opinions to say that while that standard provides an acceptable minimum in most cases, in certain instances the government may have to meet a standard that is even higher. Citing *McMillan*, 477 U.S. at 88, 106 S.Ct. 2411, we announced: "[W]hen a sentencing factor has an extremely disproportionate effect on the sentence relative to the offense of conviction," the government may have to meet a "clear and convincing evidence" standard. *United States v. Restrepo*, 946 F.2d 654, 659 (9th Cir.1991) (en banc); *see also United States v. Lombard*, 72 F.3d 170, 186–87 (1st Cir.1995) (holding that where sentence enhancement is "enormous" downward departure was allowed because enhancing a sentence in such a manner based on a preponderance of the evidence may have "exceeded" constitutional limits); *United States v. Gigante*, 39 F.3d 42, 48 (2d Cir.1994) (stating that preponderance of the evidence is a threshold basis for sentencing but that courts may require higher standards to be met where the factor leads to a "substantially enhanced sentencing range"); *United States v. Townley*, 929 F.2d 365, 369 (8th Cir.1991) (stating that "the preponderance standard the [*McMillan*] Court approved in the garden variety sentencing determinations may fail to comport with due process where, as here, a sentencing enhancement factor becomes 'a tail which wags the dog of the substantive offense' ") (quoting *McMillan*, 477 U.S. at 88, 106 S.Ct. 2411); *United States v. Kikumura*, 918 F.2d 1084, 1101–02 (3d Cir.1990) (holding that a factor that enormously increased defendant's sentence had to be proven by clear and convincing evidence).

Given this case law, it is not surprising that neither the Supreme Court nor any circuit court has ever suggested that Con-

---

**15.** While in *McMillan* the court pointed out that "[s]entencing courts have traditionally heard evidence and found facts without any prescribed burden of proof at all," 477 U.S. at 91, 106 S.Ct. 2411, that statement necessarily implies that such courts, in order to find facts, have employed at least a preponderance standard. Fact-finding requires that someone prove the facts by some standard, and a preponderance is the lowest standard ordinarily applied. In fact, the Court's remark in *McMillan* was made with reference to the question whether the Due Process Clause required the government to establish sentencing facts by clear and convincing evidence or by a mere preponderance of the evidence.

gress may shift the burden of proof regarding an essential factor in any kind of sentencing enhancement, let alone one as extreme as the law before us.[16] The Court's reasoning in *Mullaney*, in fact, suggested, in emphatic terms, that such burden-shifting would be unconstitutional. The Court said that under a statute that shifts the burden of proof regarding an essential fact, a defendant "can be given a life sentence when the evidence indicates that it is *as likely as not* that he deserves a significantly lesser sentence. This is an intolerable result...." 421 U.S. at 703, 95 S.Ct. 1881. While that statement was made with reference to a statute proscribing criminal conduct, it describes precisely the result that would occur were we to uphold the burden-shifting provision of the three-strikes statute. Moreover, the Court in *Watts*, consistent with the *Mullaney* analysis, held that whether or not a defendant has been acquitted of using or carrying a firearm during the offense of conviction, his sentence may be enhanced for possessing a firearm during that offense "*so long as that conduct has been proved by a preponderance of the evidence.*" *Id.* 117 S.Ct. at 638 (emphasis added). This statement forcefully supports the conclusion that the dangerous weapon ingredient in this case must also be proved by at least a preponderance of the evidence.

Indeed, the three-strikes enhancement has both of the hallmarks of the type of sentence enhancement that we, and other circuits, have stated may require the *government* to prove the elements by *more* than a preponderance of the evidence. First, the enhancement is "enormous." *Lombard,* 72 F.3d at 186. Without the three-strikes law, Kaluna faced 188–235 months, or from just over 15 to just under 20 years, in prison. At the time of sentencing he was 33 years old. The practical effect of a life sentence could well be that Kaluna would be imprisoned in the neighborhood of 35 to 45 years. In other words, application of the three-strikes provision could easily double or triple Kaluna's already harsh sentence. By any measure, therefore, "the consequences of an erroneous determination [of the facts] are dire." *Cooper v. Oklahoma,* 517 U.S. 348, 116 S.Ct. 1373, 1381, 134 L.Ed.2d 498 (1996). Second, unlike the law in *McMillan,* 477 U.S. at 81–82, 106 S.Ct. 2411, the three-strikes enhancement allows—indeed, requires (when the triggering offense is not punishable by life in prison)—the court to impose a sentence above the statutory maximum—in fact, far above: life in prison.

We therefore conclude that due process does not allow courts to *presume,* simply because a defendant has been convicted of a crime such as robbery that "involves a substantial risk that physical force ... may be used," § (2)(F)(ii), that he either *actually* used or threatened to use a dangerous weapon or *actually* caused a death or serious bodily injury, § (3)(A), and then, on the basis of that presumption, to enhance his sentence from a term of years to life imprisonment. It is one thing to enhance a defendant's sentence by a few years because the government has shown by at least a preponderance of the evidence that, for example, he used a firearm in an offense; it's quite another to enhance a defendant's sentence to life in prison because *he* did not establish that he did *not* use a firearm. Indeed, in this case the vice is particularly severe: the defendant must carry his burden "by clear and convincing evidence." § (3)(A). The three-strikes law thus forces the defendant to bear the unacceptable risk that he will be sentenced to life in prison even if he "has already demonstrated that he ... more likely than not" did *not* use a gun in a "qualifying" offense. *Cooper,* 116 S.Ct. at 1381 (holding that statute violated due process because it presumed defendants competent to stand trial unless they proved otherwise by clear and convincing evidence). Such a consequence is, as the Court has already said, "intolerable." *Mullaney,* 421 U.S. at 703, 95 S.Ct. 1881.

---

**16.** The Seventh Circuit, however, concluded that § (3)(A)'s deadly weapon/death or serious bodily injury component constituted an affirmative defense. *See United States v. Wicks,* 132 F.3d 383, 387–88 (7th Cir.1997), *cert. denied,* — U.S. ——, 118 S.Ct. 1546, 140 L.Ed.2d 694 (1998). On that basis, it found the three-strikes statute's burden shifting to be constitutional. We simply disagree with the Seventh Circuit's characterization of the § (3)(A) component. For the reasons described above, *see supra* at 1077–80, we think it clear that § (3)(A) sets forth an essential element of the "strike."

We hold that the parts of the statute that relate to whether prior robbery convictions and "other offense[s]" qualify as strikes—namely, §§ (3)(A), (2)(F)(ii), and the robbery clause of § (2)(F)(i)—are unconstitutional. We must invalidate these provisions because each is inextricably intertwined with the other. *See Hill v. Wallace*, 259 U.S. 44, 70–71, 42 S.Ct. 453, 66 L.Ed. 822 (1922) (requiring courts to invalidate unconstitutional regulations that are "so interwoven ... that they cannot be separated"). If we were to invalidate only the actual burden-shifting provision, and leave the presumptive classification provisions in effect, our ruling would produce an effect precisely the opposite of that which Congress intended in adopting § (3)(A): we would be *enlarging* the number of robbery convictions and "other offense[s]" that would qualify as strikes, while the whole purpose of § (3)(A) is to *reduce* the number of such offenses that qualify as strikes by limiting them to those that are most serious—offenses that involve acts or consequences not present in the case of simple robberies. There is no indication that Congress would have wished to classify all "robberies" and "other offense[s]" (as described in § (2)(F)(ii)) as strikes. Its actions show that its intent was directly contrary.[17]

## III

Since we conclude that the three-strikes statute is constitutional in general, but that the provisions governing certain offenses that qualify only under specified conditions are unconstitutional, we must confront the question of severability. *See, e.g., Alaska Airlines v. Brock*, 480 U.S. 678, 684, 107 S.Ct. 1476, 94 L.Ed.2d 661 (1987). "[W]henever an act of Congress contains unobjectionable provisions separable from those found to be unconstitutional, it is the duty of this court to so declare, and to main-

tain the act in so far as it is valid." *El Paso & Northeastern R.R. v. Gutierrez*, 215 U.S. 87, 96, 30 S.Ct. 21, 54 L.Ed. 106 (1909). In determining whether unconstitutional provisions are severable, we engage in a two-part inquiry. *Board of Natural Resources v. Brown*, 992 F.2d 937, 948 (9th Cir.1993). "First, we inquire whether the Act which remains after the unconstitutional provisions are excised is 'fully operative,'" *id.*, or "functionally independent" of the rest. *Alaska Airlines*, 480 U.S. at 684, 107 S.Ct. 1476. Second, "we then inquire whether Congress would have enacted the constitutional provisions of the Act independently of the unconstitutional provisions." *Brown*, 992 F.2d at 948.

We conclude that the three-strikes law is fully operative without the unconstitutional clauses: §§ (3)(A), (2)(F)(ii), and the robbery clause of § (2)(F)(i). The bulk of the statute remains intact, and is functionally independent. Convictions on any one of twelve or thirteen of the original fourteen enumerated felonies still count as strikes;[18] and three such convictions still require imposition of a mandatory life sentence upon an appropriate request by the prosecutor. That some offenses have been struck has no effect on those that remain.

Equally important, we can be "confident" that Congress would have enacted the law independently of the offending provisions. *See Brown*, 992 F.2d at 948. The remaining felonies are those which are so serious that Congress decided to enhance the punishment of defendants with three or more such convictions regardless of whether the additional requirements mandated under § (3)(A) were satisfied. Since Congress was willing to classify twelve specific crimes as "serious violent felonies" unconditionally and to make several

---

**17.** We note that we cannot simply revise the burden of proof. To do so would require us to rewrite the statute, *see Hill*, 259 U.S. at 70–71, 42 S.Ct. 453, *cited in Alaska Airlines, Inc. v. Brock*, 480 U.S. 678, 684, 107 S.Ct. 1476, 94 L.Ed.2d 661 (1987), and to make legislative choices best left to Congress. *See, e.g., Brogan v. United States*, —— U.S. ——, 118 S.Ct. 805, 139 L.Ed.2d 830 (1998); *Hill*, 259 U.S. at 70–71, 42 S.Ct. 453; *Hannon v. Security Nat'l Bank*, 537 F.2d 327, 329 (9th Cir.1976). While Congress may have the authority to classify as strikes the

offenses we strike from the statute, it may do so only if the burden of proof for factual determinations meets due process requirements. We cannot anticipate Congress' actions in that regard. Nor would it be appropriate for us to determine in advance whether a higher standard than preponderance of the evidence is required.

**18.** We reiterate that the provision governing arson, while apparently indistinguishable for purposes of the legal questions before us, is not at issue in this case. *See supra* n. 2.

others strikes only if the defendant used a dangerous weapon or caused serious bodily injury, we can safely assume it would have enacted the law with only the twelve specific crimes, if necessary. Put in other terms, without the combination of the clauses that we strike from the statute, the sentence enhancement statute will still "function in a *manner* consistent with the intent of Congress," *Alaska Airlines*, 480 U.S. at 685, 107 S.Ct. 1476.

Kaluna's sentence is VACATED and REMANDED for further proceedings consistent with this opinion.

THOMAS, Circuit Judge, concurring:

I join the majority in concluding as a general proposition that the "three strikes" law does not constitute double jeopardy, infringe on the separation of powers, violate the Ex Post Facto Clause, inflict a cruel or unusual punishment, or deny the effective assistance of counsel. I further agree that the statute requires courts to employ a fact-specific, case-by-case approach in determining whether prior convictions for unenumerated offenses constitute "strikes."

I also concur that 18 U.S.C. § 3559(c)(3)(A) does not comport with the requirements of due process.[1] However, I reach this conclusion for a different reason. Although I agree with the majority's analysis, I find it unnecessary to reach the question of whether the use or threatened use of a firearm constitutes an element rather than an exception. In my view, the "clear and convincing" burden of proof, even if it were applied to a true exception, violates due process. I would therefore hold the statute unconstitutional on a narrower basis.

A sentencing process, like a criminal trial, must satisfy the requirements of due process. *Gardner v. Florida*, 430 U.S. 349, 358, 97 S.Ct. 1197, 51 L.Ed.2d 393 (1977). In the context of sentence enhancements, due process typically requires that the government prove enhancing factors by a preponderance of the evidence. *McMillan v. Pennsylvania*, 477 U.S. 79, 91, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986); *United States v. Restrepo*, 946 F.2d

654, 658–59 (9th Cir.1991). Moreover, the "preponderance" standard is not constitutionally adequate in all sentencing cases. Rather, a higher standard of proof is required where the factor to be proved would have "an extremely disproportionate effect on the sentence relative to the offense of conviction." *United States v. Restrepo*, 946 F.2d at 659. *See also Witte v. United States*, 515 U.S. 389, 403, 115 S.Ct. 2199, 132 L.Ed.2d 351 (1995); *United States v. Townley*, 929 F.2d 365, 370 (8th Cir.1991).

A long-standing rule of statutory construction also establishes that the burden of production and proof may, under narrowly circumscribed conditions, be shifted to a defendant in a criminal case. Where a defendant seeks to rely on an exception to a criminal statute, he generally bears the burden of establishing and showing that he comes within that exception. *See United States v. Gravenmeir*, 121 F.3d 526, 528 (9th Cir.1997); *United States v. Freter*, 31 F.3d 783, 788 (9th Cir.1994); *Walker v. Endell*, 850 F.2d 470, 473 (9th Cir.1987). However, none of the "statutory exception" cases impose a "clear and convincing" burden of proof on the defendant. Indeed, in some circumstances, the burden of proof may not be shifted to the defendant at all. *See Gravenmeir*, 121 F.3d at 528 (noting that the burden ought not to be shifted to the defendant when it is "overbearing").

"The function of a standard of proof, as that concept is embodied in the Due Process Clause and in the realm of factfinding, is to instruct the factfinder concerning the degree of confidence our society thinks he should have in the correctness of factual conclusions for a particular type of adjudication." *Addington v. Texas*, 441 U.S. 418, 423, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979) (citations and internal quotation marks omitted). As the government increases a defendant's burden of proof, that defendant concomitantly shoulders an ever-increasing risk of an erroneous decision. *Id.* At some point, placing a particular burden of proof on a criminal defendant violates the Due Process Clause. The ques-

---

1. I therefore agree that sections 3(A), 2(F)(ii), and the robbery clause of (2)(F)(i) are invalid and must be severed from the statute.

tion presented by this case is whether, in placing a "clear and convincing" burden of proof on defendants who seek to invoke section 3559(c)(3), Congress has reached that juncture.

The Supreme Court articulated the general due process principles by which burdens of proof should be examined in *Cooper v. Oklahoma,* 517 U.S. 348, 116 S.Ct. 1373, 134 L.Ed.2d 498 (1996) and *McMillan v. Pennsylvania,* 477 U.S. 79, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986). In *Cooper,* the Court struck down an Oklahoma statute creating a presumption that a criminal defendant was competent to stand trial unless he proved his incompetence by clear and convincing evidence. *Id.* 116 S.Ct. at 1383. In that case, two state-employed psychologists had offered conflicting opinions regarding the defendant's competence. *Id.* at 1375. Although the trial judge noted that the question was a close one, he ultimately concluded that the defendant had not carried his burden by "clear and convincing" evidence and would therefore be tried. *Id.* at 1376.

In holding the statute unconstitutional, the Supreme Court rejected the notion that a state could "proceed with a criminal trial after a defendant has shown that he is more likely than not incompetent." *Id.* at 1374. The Court's analysis focused on two main inquiries: (1) whether the historical and contemporary practices of most jurisdictions was to impose this heightened standard of proof in incompetency determinations, thus suggesting both that it was necessary to "vindicate the State's interest in prompt and orderly disposition of criminal cases," and that it did not offend "a principle of justice that is deeply rooted in the traditions and conscience of our people;" and (2) whether an evaluation of the risks inherent in requiring a clear and convincing standard of proof led to the conclusion that the practice was consistent with due process. *Id.* at 1380–81 (citations and internal quotation marks omitted).

Addressing the first question, the Court noted that almost all other jurisdictions applied a standard that was more protective of a defendant's rights than was Oklahoma's "clear and convincing" rule, providing evidence that the rule did, in fact, violate a deeply-rooted principle of justice. *Id.* at 1380.

Turning to the second question, the Court noted both that the risk of error was very high, and that the consequences of error for the defendant were dire. The risk of error was high because, unlike using a preponderance standard, which would affect only a narrow class of cases in which the evidence on either side was equally balanced, the use of a clear and convincing standard would affect a class of cases in which the defendant had demonstrated that, more likely than not, he was incompetent. *Id.* at 1381. The consequences of error would be dire because, if Cooper were erroneously determined to be competent, his inability to assist in his own defense would result in a denial of a fair trial. *Id.* By contrast, the Court noted, the "injury to the State of the opposite error-a conclusion that the defendant is incompetent when he is in fact malingering-is modest." *Id.* at 1382.

Ultimately, the Court concluded that, in the context of a competency determination, the Due Process Clause would not permit a state to allocate to a criminal defendant "the large share of the risk which accompanies a clear and convincing evidence standard." *Id.* at 1383–84.

In *McMillan v. Pennsylvania,* 477 U.S. 79, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986), the Supreme Court upheld Pennsylvania's Mandatory Minimum Sentencing Act. The Act provided that anyone convicted of certain enumerated felonies was subject to a mandatory minimum of five years' imprisonment if the sentencing judge found by a preponderance of the evidence that the person visibly possessed a firearm during the commission of the offense. The Court rejected the theory that the State had to prove visible possession of a firearm beyond a reasonable doubt. *Id.* at 84, 106 S.Ct. 2411. In reaching this conclusion, the Court discussed the balance of interests present in a sentencing proceeding. *Id.* at 83–84, 106 S.Ct. 2411. On the one hand was the government's interest in deterring the illegal use of firearms; on the other was the defendant's liberty interest, which had been diminished by a guilty verdict. The risk at stake for both parties was the risk of error: that the Court would be mistaken in its determination that a firearm was

or was not visible during the commission of the crime.

Weighing the interests and the risks at stake, the Court affirmed the lower Court's determination that, on balance, "it is reasonable for the defendant and the Commonwealth to share equally in any risk of error." *Id.* The Court declined to establish a bright line rule, noting that the constitutionality of similar statutes would "depend on differences of degree," and that "the law is full of situations in which differences of degree produce different results." *Id.* at 91, 106 S.Ct. 2411.

Consistent with *McMillan*, the Court recently held in *United States v. Watts*, 519 U.S. 148, 117 S.Ct. 633, 136 L.Ed.2d 554 (1997), that an acquittal in a criminal case did not preclude the sentencing judge from enhancing a sentence based on the facts underlying the alleged crime. *Watts* reaffirmed that the "preponderance standard at sentencing generally satisfies due process" but noted that there was a divergence among the circuits as to whether "relevant conduct that would dramatically increase the sentence must be based on clear and convincing evidence." *Id.* 117 S.Ct. at 637.

The statute at hand, 18 U.S.C. § 3559, turns these principles on their head. It places a negligible burden of proof on the prosecution, but forces the defendant to shoulder one of the highest burdens extant in the law: proof by clear and convincing evidence. Thus, rather than embracing the notion of "shared risk" as articulated in *Cooper* and *McMillan*, the statute imposes a Sisyphean evidentiary weight on the defendant. The effect on this case is not trivial. Indeed, the standard of proof employed is probably determinative of whether Kaluna will spend the rest of his life in prison.

Such a scheme cannot pass constitutional muster. First, no court has held that a defendant may, consistent with due process, assume a clear and convincing standard of proof as to matters which "dramatically increase the sentence." *Watts*, 117 S.Ct. at 637. In fact, the salient question in sentencing cases has been not whether the defendant, but rather whether the prosecution should be held to a higher burden of proof. *See, e.g., McMillan*, 477 U.S. at 88, 106 S.Ct. 2411; *Restrepo*, 946 F.2d at 659; *United*

*States v. Lombard*, 72 F.3d 170, 175 n. 6, 177–80 (1st Cir.1995); *Witte*, 515 U.S. at 403, 115 S.Ct. 2199; *Townley*, 929 F.2d at 370; *United States v. Trujillo*, 959 F.2d 1377, 1382 (7th Cir.1992); *United States v. Kikumura*, 918 F.2d 1084, 1100 (3d Cir.1990).

Moreover, where, as here, an enhancement provision results in a great disparity between the sentence for the crime charged in the indictment and the sentence imposed, courts have placed a higher burden *on the prosecution.* As the Third Circuit has noted, "[i]n this extreme context, ... a court cannot reflexively apply the truncated procedures that are perfectly adequate for all of the more mundane, familiar, sentencing determinations." *Kikumura*, 918 F.2d at 1100. Thus, precedent suggests that the prosecution ought to bear a higher burden of proof in cases such as the one at bar; no court has ever sustained a burden-shift requiring "clear and convincing" evidence from the defendant under similar circumstances.

Second, the statute creates a grave risk of error. The "more stringent the burden of proof a party must bear, the more that party bears the risk of an erroneous decision." *Cooper*, 116 S.Ct. at 1381 (quoting *Cruzan v. Director, Mo. Dept. of Health*, 497 U.S. 261, 283, 110 S.Ct. 2841, 111 L.Ed.2d 224 (1990)). Because the sentence enhancement is founded on historical events, the probability of an erroneous decision under section 3559(c)(3)(A) is substantially higher than the corresponding risks in either *Cooper* or *McMillan*. In *Cooper*, 116 S.Ct. at 1374–75, the issue was the defendant's present competency, one which could be assessed from the evidence at hand. In *McMillan*, 477 U.S. at 84, 106 S.Ct. 2411, the sentencing factor was visible possession of a firearm in the commission of the charged crime, again a fact which could be readily ascertained within the case context. *Id.* at 84, 106 S.Ct. 2411.

Here, by contrast, the prosecution seeks to use a 1975 conviction, for the second degree robbery of Bill's Bakery in Honolulu, Hawaii, as Kaluna's "third strike." In order to avoid a life sentence, Kaluna must assemble clear and convincing proof that he did not use, or threaten to use, a firearm or another dangerous weapon in a crime to which he pled guilty

over twenty years ago. That task would be formidable under a mere preponderance standard; it becomes an near-futile exercise under the constraint of producing "clear and convincing" proof.

The district court in this case relied solely on the indictment charging Kaluna with first degree robbery, and accepted as true the facts alleged therein. Kaluna, in fact, pled guilty to second degree robbery, a lesser crime which does not include the use of a weapon as an element of the offense. The plea does not contain any reference to the use or threat of use of a weapon. The uncertainties inherent in relying on a decades old, ambiguous record underscore the substantial risk of the court making an erroneous determination based solely on the high burden of proof imposed on the defendant.[2]

Finally, the consequences of an erroneous determination are severe. Even if Kaluna were able to show that, more likely than not, he did not use or threaten to use a firearm or other dangerous weapon in the Bill's Bakery robbery, application of the statute would mandate life imprisonment. The district court imposed a life sentence on Kaluna based entirely on the standard of proof, specifically finding that Kaluna had failed to meet his burden "to preclude the use of any of his convictions." Thus, the similarities with *Cooper* are obvious: for Kaluna and those in like situations, the risk of error is high, and the consequences dire.

Thus, notwithstanding the less stringent constitutional standards which govern sentencing, *see Restrepo*, 946 F.2d at 658–59, 18 U.S.C. § 3559 violates due process. Congress may not, as it has sought to do here, "advance the objectives of its criminal laws at the expense of the accurate factfinding owed to the criminally accused who suffer the risk of nonpersuasion." *McMillan*, 477 U.S. at 102, 106 S.Ct. 2411 (Stevens, J., dissenting). Rather, the values underlying procedural due process—particularly those of accuracy and the appearance of fairness—require a more

equal distribution of the risk than is contemplated by this statute.

Because 18 U.S.C. § 3559(c)(3)(A) as applied to Kaluna violates due process, we need not decide whether the factor to be disproved constitutes a true exception. Thus, although I agree with the majority's conclusion, I would not reach the broader issue of whether the statutory burden-shifting is itself impermissible. Instead, I would hold the statute unconstitutional because the burden it places on the defendant of disproving a sentence enhancement factor by "clear and convincing" evidence violates due process.

LEAVY, Senior Circuit Judge, dissenting:

Congress has provided a mandatory life sentence for a person who commits a serious violent felony if that person has been convicted on separate prior occasions of two or more serious violent felonies. 18 U.S.C. § 3559(c)(i). It has defined serious violent felony without qualification in § 3559(c)(2)(F)(i) and (ii). "[R]obbery as described in section 2111, 2113, or 2118" is a serious violent felony. § 3559(c)(2)(F)(i). The United States Attorney is required to file a timely information charging the prior offenses. § 3559(c)(4) & 21 U.S.C. § 851(a). The burden is on the government to prove the prior serious violent felonies at sentencing.

Congress has, in addition, provided that a serious violent felony committed by the defendant "shall not serve as a basis for sentencing" under the mandatory life provision if the serious violent felony is a robbery and the defendant proves by clear and convincing evidence that no firearm or other dangerous weapon was used and no threat of use of a weapon was involved. § 3559(c)(3)(A). Although the prior robbery is still a "serious violent felony" if the defendant shows that no firearm or other dangerous weapon was used or its use threatened, it does not count as one of the three strikes.

---

**2.** The dissent contends that "Kaluna never tried to prove nor does he even suggest that he did not use a firearm or other weapon in his robbery of Bill's Bakery." Although Kaluna did not testify at the sentencing hearing, his counsel argued that the Bill's Bakery robbery did not qualify

under the statute because Kaluna's plea did not reference use or threat of use of a weapon, and the offense to which Kaluna pled did not contain a weapons element. Thus, Kaluna did contest inclusion of the offense, albeit on the basis of the record, not with personal testimony.

Judge Reinhardt reads the three strikes statutory scheme as requiring the defendant to prove that his prior robbery offenses are not serious violent felonies, and thus, not only does he conclude that § 3559(c)(3)(A) is unconstitutional but goes on to declare all of § (c)(2)(F)(ii) and parts of § (c)(2)(F)(i) unconstitutional as well, thereby removing armed robbery as well as any other robbery from the scope of the three strikes law. For example, if a person is before a United States court on a conviction of armed robbery and has a number of separate prior serious violent felony convictions for kidnapping and assault with intent to commit rape he would not qualify for the three strikes rule because he is not within the scope of § 3559(c) as "a person who is convicted in a court of the United States of a serious violent felony." Once the inclusion of robbery within the definition of serious violent felony is deemed unconstitutional, it does not matter what Kaluna has done in the past—he cannot be sentenced under § 3559(c).

If Congress had enacted none of subsection (c)(3), the statute would be free from the infirmities found by the majority, and Kaluna would face a mandatory life sentence even if the demonstrated and acknowledged truth is that he never used or threatened to use a firearm or other dangerous weapon in any of his prior serious violent felonies. Contrary to Judge Reinhardt's view, Congress intended to classify all robberies as serious violent felonies. It is not unconstitutional for Congress to also provide some leniency for a defendant who, in spite of being convicted of a serious violent felony, proves that he or she didn't use or threaten to use a firearm.

Judge Thomas would hold that 18 U.S.C. § 3559(c)(3)(A) as applied violates due process because it places on Kaluna the burden of proving by "clear and convincing" evidence that he did not use a firearm during his robbery of Bill's Bakery. Kaluna never tried to prove nor does he even suggest that he did not use a firearm or other weapon in his robbery of Bill's Bakery. Moreover, Kaluna, as the person who committed the robbery, appropriately has the burden of proof because he has unique knowledge of the circumstances of its commission.

I would join the Seventh Circuit and hold that the three strikes law, in its entirety, is constitutional. *United States v. Wicks*, 132 F.3d 383 (7th Cir.1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 1546, 140 L.Ed.2d 694 (1998).