**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Bryan K. KALUNA, Defendant–Appellant.**

**No. 96–10527.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 3, 1997

Decided Aug. 3, 1998

Rehearing En Banc Granted and Opinion Withdrawn Dec. 4, 1998

Argued and Submitted March 25, 1999

Filed Sept. 30, 1999

Alexander Silvert, First Assistant Federal Defender, Honolulu, Hawaii, for the defendant-appellant.

David S. Kris, United States Department of Justice, Washington, D.C., for the plaintiff-appellee.

Before: HUG, Chief Judge, and BROWNING, SCHROEDER, PREGERSON, RYMER, KLEINFELD, TASHIMA, THOMAS, GRABER, McKEOWN, and WARDLAW, Circuit Judges.

Opinion by Judge GRABER; Dissent by Judge THOMAS

GRABER, Circuit Judge:

In this case of first impression for the Ninth Circuit, we. reject several constitutional challenges to the federal "three-strikes law," 18 U.S.C. § 3559(c). We therefore affirm the sentence of life imprisonment that the district court imposed.

## FACTUAL AND PROCEDURAL BACKGROUND

For present purposes, the relevant facts are not disputed. The government indicted defendant Bryan K. Kaluna for the crimes of bank robbery and conspiracy to commit bank robbery, in violation of 18 U.S.C. § 2113(a) and 18 U.S.C. § 371.

In an Amended Information and Notice, the government stated its intention to seek an enhanced penalty under the three-strikes law,[1] should Defendant be convicted. The Amended Information and Notice listed Defendant's prior felony convictions on which the government intended to rely. All involved robberies:

No. 78–01291–01 (United States) (International Savings and Loan);

No. 52405 (State of Hawaii) (Pioneer Bank);

No. 50282 (State of Hawaii) (Pex of Hawaii);

No. 50148 (State of Hawaii) (E.G.Marshal's);

No. 47685 (State of Hawaii) (Bill's Bakery); and

No. 85–1266 (State of Hawaii) (Pioneer Bank/Honolulu Federal/Hawaii Thrift).

The parties stipulated that Defendant had been convicted of the crimes listed in the Amended Information and Notice.

A jury found Defendant guilty, as charged, of bank robbery and conspiracy to commit bank robbery. Defendant's co-conspirator used a gun in the robbery and, the district court found, Defendant knew that he would. Defendant concedes that the present crimes of conviction are "serious violent felonies" within the meaning of the three-strikes law.

In the E.G. Marshal's case, Defendant had been convicted of robbery in the first degree. He concedes that this conviction counts as a "serious violent felony" under 18 U.S.C. § 3559(c)(2)(F)(i). *See* Haw. Rev.Stat. § 708–840(1) (providing that

---

**1.** Relevant portions of the three-strikes law are quoted below at p. 1193.

first-degree robbery involves the use or threatened use of force, while armed with a dangerous instrument, in the course of committing theft).

Defendant's other prior convictions were for robbery in the second degree. Under Hawaii law, a person commits robbery in the second degree if, in the course of committing a theft, the person (a) "uses force against the person of anyone present" with the intent of overcoming resistance, or (b) "threatens the imminent use of force against the person of anyone who is present with intent to compel acquiescence to the taking of ... property," or (c) "recklessly inflicts serious bodily injury upon another." Haw.Rev.Stat. § 708–841(1). That offense is punishable by a maximum term of imprisonment of 10 years. *See* Haw.Rev.Stat. § 706–660. Defendant thus concedes that second-degree robbery in Hawaii is a "serious violent felony" as defined in 18 U.S.C. § 3559(c)(2)(F)(ii).

Defendant testified during the trial on the present charges. He testified that he had threatened tellers with the use of a gun during each of the three prior bank robberies encompassed in No. 85–1266 (Pioneer Bank/Honolulu Federal/Hawaii Thrift). For example, regarding the Hawaii Thrift robbery, Defendant testified:

Q. Isn't it true that you were wearing a nylon stocking mask at that robbery?

A. Yes.

Q. And you put your hand inside of a brown paper bag?

A. Yes.

Q. What was the significance of putting your hand inside the brown paper bag?

A. To indicate that I had a gun.

Defendant testified similarly with respect to the Honolulu Federal and Pioneer Bank robberies. In each of the three instances, Defendant stated, he wore a stocking mask over his head and had his hand in an opaque bag "to act like I had a gun" so as to obtain property from the teller, although he denied actually having carried a gun during any of those three bank robberies.

With respect to the robbery of Bill's Bakery, the indictment charged Defendant with robbery in the first degree. However, Defendant pleaded guilty to the reduced charge of robbery in the second degree.

In the present case, the district court sentenced Defendant to the enhanced penalty of mandatory life imprisonment under the three-strikes law. In so doing, the court counted the present convictions as the third strike, the E.G. Marshal's first-degree robbery conviction as the second strike, and the Bill's Bakery second-degree robbery conviction as the first strike. The court held that all three strikes qualified under 18 U.S.C. § 3559(c)(2)(F)(i). The court also held that Defendant had not demonstrated that the first strike was non-qualifying under 18 U.S.C. § 3559(c)(3). Additionally, the court expressly concluded that all the other prior second-degree robbery convictions qualified as strikes under 18 U.S.C. § 3559(c)(2)(F)(ii). Finally, the court took notice of Defendant's trial testimony regarding the Pioneer Bank, Honolulu Federal, and Hawaii Thrift robberies encompassed by conviction No. 85–1266.

Defendant appealed. He first challenged his convictions in the present case. A panel of this court affirmed his convictions in an unpublished memorandum disposition. Defendant has not sought rehearing with respect to the affirmance of his convictions.

Defendant also challenged his sentence, arguing that the three-strikes law is unconstitutional in several respects that require the court to disregard the first of the purported strikes. A panel of this court, in a later-withdrawn opinion, concluded unanimously that the three-strikes law does not violate separation-of-powers principles, the Double Jeopardy Clause, the Ex Post Facto Clause, the Eighth Amendment, or the right to receive effective assistance of counsel. *See United States v. Kaluna,* 161 F.3d 1225 (9th Cir.1998)

(opinion withdrawn) (We incorporate the relevant portions of the withdrawn opinion and attach it as an Appendix to this opinion.). By a two-to-one majority, however, the panel held that the three-strikes law violated Defendant's due process rights. *See id.* at 1073–84 (Reinhardt, J., holding that the use of a firearm during a prior robbery constitutes an element, so that allocation of the burden of proof to a defendant violates the defendant's due process rights); *id.* at 1084–87 (Thomas, J., concurring on the ground that the "clear and convincing" level of proof that the statute allocates to a defendant violates due process); *id.* at 1087–88 (Leavy, J., dissenting from the holding that the statute violates due process).

The government petitioned for rehearing en banc, a request with which Defendant agreed. The court granted the petition for rehearing en banc and ordered that the panel's opinion be withdrawn. *See United States v. Kaluna,* 161 F.3d 1225 (9th Cir.1998).

## STANDARD OF REVIEW

■ We review de novo a district court's interpretation of a statute. *See United States v. Hunter,* 101 F.3d 82, 84 (9th Cir.1996). We also review de novo a district court's determination that a statute is constitutional. *See United States v. Kim,* 94 F.3d 1247, 1249 (9th Cir.1996).

## THE THREE–STRIKES LAW

Some of Defendant's arguments require us to construe the three-strikes law. Title 18 U.S.C. § 3559(c)(1) provides:

Notwithstanding any other provision of law, a person who is convicted in a court of the United States of a serious violent felony shall be sentenced to life imprisonment if-

(A) the person has been convicted (and those convictions have become final) on separate prior occasions in a court of the United States or of a State of-

(i) 2 or more serious violent felonies; or

(ii) one or more serious violent felonies and one or more serious drug offenses; and

(B) each serious violent felony or serious drug offense used as a basis for sentencing under this subsection, other than the first, was committed after the defendant's conviction of the preceding serious violent felony or serious drug offense.

In 18 U.S.C. § 3559(c)(2)(F), Congress defines the term "serious violent felony" for the purpose of § 3559(c)(1) to mean

(i) a Federal or State offense, by whatever designation and wherever committed, consisting of . . . robbery (as described in section 2111, 2113, or 2118); . . . or attempt, conspiracy, or solicitation to commit any of the above offenses; and

(ii) any other offense punishable by a maximum term of imprisonment of 10 years or more that has as an element the use, attempted use, or threatened use of physical force against the person of another or that, by its nature, involves a substantial risk that physical force against the person of another may be used in the course of committing the offense[.]

Title 18 U.S.C. § 3559(c)(3)(A) provides in pertinent part:

Robbery . . . shall not serve as a basis for sentencing under this subsection [3559(c) ] if the defendant establishes by clear and convincing evidence that—

(i) no firearm or other dangerous weapon was used in the offense and no threat of use of a firearm or other dangerous weapon was involved in the offense; and

(ii) the offense did not result in death or serious bodily injury . . . to any person.

■ Section 3559(c)(1) places the burden on the government to demonstrate

that a defendant was convicted of at least two prior offenses that qualify as "serious violent felonies" under § 3559(c)(2)(F). Defendant asserts that the statute fails to tell us who must prove the existence of the prior strikes. We disagree. The structure of the statute shows that this is the government's burden because, in the absence of proof of qualifying prior convictions, a defendant receives the standard, lesser sentence and thus benefits from the absence of proof. Additionally, the purpose of the statute is consonant with requiring the government to prove the qualifying prior convictions, because they serve to enhance the sentence. *See United States v. Young*, 33 F.3d 31, 32 (9th Cir. 1994) ("The Government bears the burden of proving factors enhancing a sentence by a preponderance of the evidence."); *United States v. Oberle*, 136 F.3d 1414, 1423–24 (10th Cir.) (holding that the government bears the burden of proving the prior strikes under the three-strikes law), *cert. denied*, —— U.S. ——, 119 S.Ct. 197, 142 L.Ed.2d 161 (1998).

■ The government carried its burden here. As noted, the parties stipulated that Defendant had been convicted earlier of several robberies that fit the definition of "serious violent felonies" under the statute. *See United States v. West*, 826 F.2d 909, 912 (9th Cir.1987) (holding that the government established the defendant's prior convictions by detailing them in a presentence report that the defendant did not challenge); *Oberle*, 136 F.3d at 1423–24 (holding that the government carried its burden of proving prior strikes under the three-strikes law by introducing certified copies of four previous convictions).

■ Defendant argues nonetheless that, with respect to a robbery that falls under the definition in § 3559(c)(2)(F)(ii), the government must prove more before the prior conviction may be counted as a strike, *viz.*, that the exception in § 3559(c)(3)(A) does not apply. The answer turns on whether the exception to the definition of a strike, § 3559(c)(3)(A), is an

element of the offense or is part of a sentencing factor. *See Almendarez–Torres v. United States*, 523 U.S. 224, 118 S.Ct. 1219, 1228–29, 140 L.Ed.2d 350 (1998) (stating that question). If § 3559(c)(3)(A) is an element of the offense, the government must prove that a defendant committed the prior offenses by using, or threatening to use, a dangerous weapon, or that the prior offenses involved death or serious bodily injury. *See id.* at 1229 (stating that the government must prove every element of the offense beyond a reasonable doubt); *see also Young*, 33 F.3d at 32 (stating that the government must prove a factor that enhances a sentence by a preponderance of the evidence). If, however, § 3559(c)(3)(A) is an affirmative defense that is part of a sentencing factor, then Congress may require a defendant to prove that no weapon was used, or was threatened to be used, and that no serious bodily injury or death resulted. *See Almendarez–Torres*, 118 S.Ct. at 1229–30, which cites and relies on *Patterson v. New York*, 432 U.S. 197, 205–07, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977) (upholding a New York statute that required the defendant, at the guilt stage, to prove by a preponderance of the evidence the affirmative defense of extreme emotional disturbance).

In arguing whether the statute makes injury, death, or the use or threatened use of a weapon an "element" or an "affirmative defense," both parties refer by analogy to cases that construe statutes about guilt of an underlying crime, rather than about sentencing. We believe, however, that the Supreme Court's recent decision in *Almendarez–Torres* should guide our interpretive task.

In *Almendarez–Torres*, the Supreme Court considered whether 8 U.S.C. § 1326(b)(2), which provides for enhanced prison sentences for aliens who return to the United States after having been deported for committing an aggravated felony, defines a separate crime or is a sentencing factor. The Court concluded that

§ 1326(b)(2) does not create a separate crime that must be charged in an indictment, but instead is a sentencing provision that "simply authorizes a court to increase the sentence for a recidivist." *Almendarez–Torres*, 118 S.Ct. at 1222. In determining whether Congress intended the factor described by § 1326(b)(2) to be an element of a separate crime or a sentencing factor, the Court "look[ed] to the statute's language, structure, subject matter, context, and history." *Id.* at 1223. The Supreme Court recently made clear that *Almendarez–Torres* remains good law. *See Jones v. United States*, 526 U.S. 227, 119 S.Ct. 1215, 1226–27, 143 L.Ed.2d 311 (1999) (citing *Almendarez–Torres* with approval and stating that "recidivism increasing the maximum penalty need not be so charged").

As instructed by the Supreme Court, we examine the wording, structure, subject matter, context, and history of the three-strikes law. When we do, we conclude that § 3559(c) serves only to enhance a defendant's sentence on account of prior violent felonies, not to create an element of the present offense. We also conclude that § 3559(c)(3)(A) is a kind of affirmative defense to the use of certain prior violent felonies as a sentencing factor.

We focus first and foremost, as did the Court in *Almendarez–Torres*, on the subject matter of the statute: "At the outset, we note that the relevant statutory subject matter is recidivism. That subject matter—prior commission of a serious crime—is as typical a sentencing factor as one might imagine." *Almendarez–Torres*, 118 S.Ct. at 1224; *see also id.* ("[T]he lower courts have almost uniformly interpreted statutes (that authorize higher sentences for recidivists) as setting forth sentencing factors, not as creating new crimes.... And we have found no statute that clearly makes recidivism an offense element in such circumstances.") (citations omitted). Like the statute at issue in *Almendarez–Torres*, § 3559(c) is a recidivist statute. It enhances the sentence of a defendant who is convicted of a serious violent felony when the defendant previously was convicted of at least two other serious violent felonies.

We next consider the wording, context, and structure of § 3559(c). Section 3559 bears the title, "Sentencing classification of offenses," and everything in § 3559 pertains to the imposition of sentence after conviction. *See Almendarez–Torres*, 118 S.Ct. at 1226 (holding that a statute's title is a tool for interpreting the statute and that a title containing the word "penalties" usually signals a sentencing provision rather than an element). Additionally, § 3559(c) is worded to pertain only to the imposition of a sentence, not to the offense itself.

Turning now to the exception, we see first that it pertains to sentencing only. Section 3559(c)(3)(A) explains the narrow circumstances in which "[r]obbery ... shall not serve as a *basis for sentencing*" under § 3559(c). (Emphasis added.) Second, we see that Congress has worded § 3559(c)(3)(A) plainly to shift to a defendant the burden of establishing the exception: "Robbery ... shall not serve as a basis for sentencing under this subsection if *the defendant establishes*" certain facts. (Emphasis added.)

Contextually, it is significant that the exception is quite narrow. Under § 3559(c)(3)(A), only offenses that did not in fact involve injury, death, or the use or threatened use of a dangerous weapon escape being counted as strikes. All the many other offenses that qualify as "serious violent felonies" under § 3559(c)(2)(F) are strikes. The statutory reach is broad, encompassing a large number of crimes, while the exception for certain limited-violence offenses is narrow. In that circumstance, it is probable that Congress intended § 3559(c)(3)(A) to be an affirmative defense to a sentencing enhancement, rather than an element. *See United States v. Freter*, 31 F.3d 783, 788 (9th Cir.1994) ("[W]here, as here, a statutory prohibition is broad and an exception is

narrow, it is more probable that the exception is an affirmative defense.").

Finally, we find nothing in the history of the three-strikes law that detracts from our view of the subject matter, wording, context, and structure of the statute.

After considering all the applicable factors, we join the Seventh Circuit in concluding that the exception found in § 3559(c)(3)(A) is an affirmative defense to a sentencing enhancement. *See United States v. Wicks*, 132 F.3d 383, 388–89 (7th Cir.1997), *cert. denied*, — U.S. —, 118 S.Ct. 1546, 140 L.Ed.2d 694 (1998). Therefore, the government did not need to prove that Defendant had committed a prior robbery with the use or threatened use of a dangerous weapon, or that serious bodily injury or death occurred, for that prior conviction to be considered a "serious violent felony" under § 3559(c)(2)(F). Rather, Defendant had the burden of proving that he had not used, or threatened to use, a firearm when committing his prior robberies, and that no serious bodily injury or death resulted.

## DUE PROCESS ANALYSIS

Because Defendant's present convictions qualify as a strike, to establish that Defendant was eligible to be sentenced under § 3559(c)(1) the government had only to prove that he had been convicted of two prior "serious violent felonies" under § 3559(c)(2)(F). As noted, the parties do not dispute that the E.G. Marshal's robbery conviction qualifies as a "serious violent felony" under § 3559(c)(2)(F)(i) and as a strike under § 3559(c)(1). Moreover, the parties stipulated that Defendant's remaining robbery convictions qualified as "serious violent felonies" under § 3559(c)(2)(F)(ii). Thus, the government met its initial burden.

■ The burden then shifted to Defendant to prove that none of those remaining robbery convictions qualified as a strike.

Defendant first contends that this burden shifting per se violates due process, because the exception is an "element." We have held, however, that § 3559(c)(3)(A) contains an affirmative defense to a sentencing enhancement, which Congress may require a defendant to establish. *See Almendarez–Torres*, 118 S.Ct. at 1229–30; *Patterson*, 432 U.S. at 206, 97 S.Ct. 2319; *Wicks*, 132 F.3d at 389 ("As long as the prosecution has proved all elements of the crime beyond a reasonable doubt, *Patterson* held, the state is free to allocate the burden of proving an affirmative defense to the defendant. If *Patterson* allows such a result even at the stage of the trial where guilt or innocence is decided, it follows that due process does not prohibit the kind of affirmative defense at the sentencing stage found in § 3559(c)(3)(A).").

■ In the alternative, Defendant argues that the burden of proof demanded by § 3559(c)(3)(A)—clear and convincing—is too high. We need not and do not reach that issue, because Defendant cannot establish the affirmative defense under any standard of proof. *See Washington v. Johnson*, 90 F.3d 945, 950–51 n. 3 (5th Cir.1996) (in considering a due process challenge to the allocation of the burden of proof regarding mental competency, the court declined to consider the issue, noting that "the district court's unhesitating conclusion that Petitioner was competent in fact to stand trial in 1987 demonstrates that a contrary allocation of burden of proof would not have been outcome-determinative"). Indeed, Defendant would lose as a matter of law even if the government bore the burden of proof.

Defendant did not and could not establish the absence of a qualifying "first strike" robbery. He offered limited documentary evidence during the sentencing phase of the case. He testified at trial, however, that he had threatened to use a gun in his prior robberies of Pioneer Bank, Honolulu Federal, and Thrift Savings.[2]

---

**2.** The dissent focuses largely on the robbery of Bill's Bakery. That robbery, however, has no

Defendant asserts only that the district court could not consider his trial testimony to determine whether those prior robberies involved the use, or threatened use, of a dangerous weapon. We find no support for that contention.

■ The plain wording of § 3559(c)(3)(A) cannot reasonably be interpreted to preclude a district court from considering a defendant's testimony before it, under oath, regarding the defendant's commission of prior offenses. We are aware of no court that has held or suggested that the statute contains such a limitation.

■ Nor does the Constitution bar a court from considering a defendant's trial testimony about prior offenses when imposing sentence for the present offense. Defendant had the right to remain silent but instead chose to testify, and he did not object to the questions quoted at the beginning of this opinion. A district court constitutionally can rely on a defendant's volunteered trial testimony during the sentencing phase of a trial. Therefore, the district court did not err as Defendant claims.

■ The dissent faults us for not reaching the constitutional issue of whether the "clear and convincing" burden established by § 3559(c)(3) infringes on Defendant's due process rights. The dissent's argument contravenes two well-established jurisprudential doctrines. First, to decide the constitutional question here would violate the maxim that courts are not "to decide questions of a constitutional nature unless absolutely necessary to a decision of the case." *Burton v. United States*, 196 U.S. 283, 295, 25 S.Ct. 243, 49 L.Ed. 482 (1905). "Prior to reaching any constitutional questions, federal courts must consider nonconstitutional grounds for decision. This is a fundamental rule of judicial restraint." *Jean v. Nelson*, 472 U.S. 846, 854, 105 S.Ct. 2992, 86 L.Ed.2d 664 (1985) (citation and internal quotation marks omitted); *see also Spector Motor Serv., Inc. v. McLaughlin*, 323 U.S. 101, 105, 65 S.Ct. 152, 89 L.Ed. 101 (1944) ("If there is one doctrine more deeply rooted than any other in the process of constitutional adjudication, it is that we ought not to pass on questions of constitutionality ... unless such adjudication is unavoidable."); *Meinhold v. United States Dep't of Defense*, 34 F.3d 1469, 1474 (9th Cir. 1994) (stating those principles and holding that it is error to pass over a nonconstitutional claim).

■ A corollary also is well established: that harmless-error analysis applies to nonstructural errors even when the claimed errors are constitutional. *See Neder v. United States*, —— U.S. ——, 119 S.Ct. 1827, 1833, 144 L.Ed.2d 35 (1999) ("For all [nonstructural] constitutional errors, reviewing courts must apply Rule 52(a)'s harmless-error analysis and must 'disregard' errors that are harmless 'beyond a reasonable doubt.'") (quoting *Chapman v. California*, 386 U.S. 18, 23, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967) (alteration omitted) ). A district court's use of an incorrect burden of proof at sentencing is a nonstructural error to which harmless-error analysis applies. Even in the context of capital sentencing proceedings, the Supreme Court has applied a harmless error analysis. *See, e.g., Hitchcock v. Dugger*, 481 U.S. 393, 399, 107 S.Ct. 1821, 95 L.Ed.2d 347 (1987) (reversing a death sentence because there was a constitutional error but the state did not show that the error was harmless); *Skipper v. South*

bearing on our analysis; the dissent's discussion of it, therefore, is irrelevant. We conclude that the Pioneer Bank, Honolulu Federal, and Thrift Savings robberies, *not* the Bill's Bakery robbery, establish the first strike. (The second and third strikes are conceded.) Therefore, we simply are affirming Defen-

dant's sentence on an alternative ground that was presented to the court below. *See Herring v. FDIC*, 82 F.3d 282, 284 (9th Cir.1995) ("'We may affirm on any basis the record supports, including one the district court did not reach.'").

*Carolina,* 476 U.S. 1, 7–9, 106 S.Ct. 1669, 90 L.Ed.2d 1 (1986) (analyzing an error in the sentencing proceeding for harmlessness). Additionally, the Supreme Court has applied a harmless-error analysis when the burden of proof was shifted in violation of due process. *See Rose v. Clark,* 478 U.S. 570, 579–80, 106 S.Ct. 3101, 92 L.Ed.2d 460 (1986).

Here, because Defendant admitted at trial that he had threatened tellers with the use of a gun in the Pioneer Bank, Honolulu Federal, and Thrift Savings robberies, the district court's use of the clear-and-convincing standard, even if unconstitutional, was harmless beyond a reasonable doubt; it could not have altered the outcome of the case. Because any error was harmless, we must decline to decide the constitutionality of the clear-and-convincing standard provided in § 3559(c)(3).

In summary, the district court did not err in concluding that Defendant had committed two prior serious violent felonies within the meaning of the three-strikes law.

## OTHER CONSTITUTIONAL CLAIMS

Defendant makes several additional constitutional arguments. We reject them for the reasons stated by the panel in *Kaluna. See* attached Appendix.

## CONCLUSION

Defendant's convictions and sentence are AFFIRMED.

## APPENDIX

We first consider Kaluna's general constitutional challenges to the "three strikes" law. The statute provides in relevant part that "[n]otwithstanding any other provision of law, a person who is convicted ... of a serious violent felony shall be sentenced to [mandatory] life imprisonment" if he has been convicted "on prior occasions ... of ... 2 or more serious violent felonies." 18 U.S.C. § 3559(c)(1).

Kaluna argues that the three-strikes statute violates five constitutional principles: (1) double jeopardy; (2) the separation of powers; (3) the Ex Post Facto Clause; (4) the prohibition against cruel and unusual punishment; and (5) the right to effective assistance of counsel. We have not had occasion to address these arguments with regard to the federal three-strikes statute, but three other circuits have rejected various challenges to the statute's general constitutionality. *See United States v. Rasco,* 123 F.3d 222 (5th Cir.1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 868, 139 L.Ed.2d 765 (1998); *United States v. Washington,* 109 F.3d 335, 337–38 (7th Cir.), *cert. denied,* —— U.S. ——, 118 S.Ct. 134, 139 L.Ed.2d 82 (1997); *United States v. Farmer,* 73 F.3d 836, 839–41 (8th Cir.), *cert. denied,* 518 U.S. 1028, 116 S.Ct. 2570, 135 L.Ed.2d 1086 (1996). We agree with these circuits, and with the district court, that the three-strikes statute's recidivist sentencing scheme, harsh and inflexible as it may be, is facially constitutional in general.

 First, Kaluna contends that the three-strikes statute violates the Double Jeopardy Clause because it imposes multiple punishment for the same offenses. Specifically, he argues that he has already served his punishment for his previous two "strikes," and he cannot be punished again for them by counting them against him in the instant sentence. It is true that the "Double Jeopardy Clause protects against ... the actual imposition of two punishments for the same offense." *Witte v. United States,* 515 U.S. 389, 115 S.Ct. 2199, 2204, 132 L.Ed.2d 351 (1995). But although the three-strikes statute might seem to violate this principle, the Supreme Court has long since determined that recidivist statutes do not violate double jeopardy because "the enhanced punishment imposed for the later offense 'is not to be viewed as either a new jeopardy or additional penalty for the earlier crimes,' but instead as 'a stiffened penalty for the latest crime, which is considered to be an

aggravated offense because a repetitive one.'" *Id.* 115 S.Ct. at 2206 (quoting *Gryger v. Burke,* 334 U.S. 728, 732, 68 S.Ct. 1256, 92 L.Ed. 1683 (1948)); *see also Spencer v. Texas,* 385 U.S. 554, 559–60, 87 S.Ct. 648, 17 L.Ed.2d 606 (1967); *Moore v. Missouri,* 159 U.S. 673, 16 S.Ct. 179, 40 L.Ed. 301 (1895). Thus, Kaluna's argument cannot prevail.

 Second, Kaluna contends that the three-strikes statute violates the fundamental constitutional principle of separation of powers because it impermissibly increases the discretionary power of prosecutors while stripping the judiciary of *all* discretion to craft sentences. Alternately, Kaluna argues that this court should, in order to avoid constitutional difficulties, construe the statute to permit judges to apply the statute at their discretion. Again, we are compelled by precedent to reject both arguments. The Supreme Court has stated unequivocally that "Congress has the power to define criminal punishments without giving the courts any sentencing discretion." *Chapman v. United States,* 500 U.S. 453, 467, 111 S.Ct. 1919, 114 L.Ed.2d 524 (1991); *see also Mistretta v. United States,* 488 U.S. 361, 364, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989) (upholding the constitutionality of the federal sentencing guidelines in part because "the scope of judicial discretion with respect to a sentence is subject to congressional control"). Furthermore, the legislative history of the law leaves no doubt that Congress intended it to require mandatory sentences. *See* 103 Cong. Rec. S12,525 (daily ed. Aug. 25, 1994) (statement of Sen. Daschle) (stating that the three-strikes law "will require that Federal judges hand down mandatory life sentences"); *id.* at S12,12544 (statement of Sen. Lautenberg) (emphasizing that under the three-strikes law, three-time offenders are "put away for life.... And no ifs, ands or buts about it."). The statute itself uses the words "mandatory" and "shall." In any event, we cannot narrowly construe

a law to avoid constitutional infirmity in this area because, given the principles previously announced by the Supreme Court, no constitutional question exists.

 Third, Kaluna contends that the three-strikes statute violates the Ex Post Facto Clause because it changes the legal consequences of his prior bad acts. This contention also lacks merit. The Supreme Court and this court uniformly have held that recidivist statutes do not violate the Ex Post Facto Clause if they are "on the books at the time the [present] offense was committed." *United States v. Ahumada–Avalos,* 875 F.2d 681, 683–84 (9th Cir.1989) (per curiam); *see also Weaver v. Graham,* 450 U.S. 24, 30, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981). This statute was enacted in 1994 and Kaluna committed the instant offense in 1995.

 Fourth, Kaluna argues that the three-strikes statute violates the proportionality guarantee of the Eighth Amendment. *See* U.S. Const. amend. VIII ("cruel and unusual punishments [shall not be] inflicted"). Supreme Court precedent once again forecloses his claim. In its most recent pronouncement on the subject, the Court held that "the eighth amendment 'forbids only extreme sentences that are grossly disproportionate to the crime.'" *United States v. Bland,* 961 F.2d 123, 129 (9th Cir.1992) (quoting *Harmelin v. Michigan,* 501 U.S. 957, 1001, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991) (Kennedy, J., joined by O'Connor and Souter, JJ., concurring) (constituting the holding of the Court)). Moreover, while in evaluating the proportionality of a sentence, courts "must focus on the principal felony—the felony that triggers the life sentence," *Solem v. Helm,* 463 U.S. 277, 290, 296 n. 21, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983), they must also recognize that legislatures may punish recidivists more severely than first-time offenders. *Id.* at 296, 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637. Because the statute restricts its application to instances where both the defendants' primary and past convictions are "serious vio-

lent felonies," the Court's precedent makes it clear that Kaluna's punishment for bank robbery is not sufficiently disproportionate to contravene the Eighth Amendment. *See, e.g., Harmelin,* 501 U.S. at 994–96, 111 S.Ct. 2680 (upholding life imprisonment for first offense of possessing 672 grams of cocaine); *Rummel v. Estelle,* 445 U.S. 263, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980) (upholding life sentence imposed after third nonviolent felony conviction).

■ Finally, Kaluna claims that he was deprived of the right to effective assistance of counsel because he was never advised that his guilty pleas to prior offenses could later constitute "strikes" leading to mandatory life imprisonment. Indeed, the three-strikes statute did not exist at the time of his guilty pleas to prior crimes. Following convention, however, we affirm the district court's determination to dismiss this claim without prejudice because it is properly raised through habeas corpus proceedings, not direct review. *See Custis v. United States,* 511 U.S. 485, 114 S.Ct. 1732, 1739, 128 L.Ed.2d 517 (1994) (ineffective assistance claims under recidivist statutes should be brought collaterally, not in sentencing procedures).

THOMAS, Circuit Judge, with whom Judges BROWNING, PREGERSON and TASHIMA join, dissenting:

Under the "three strikes" statute, a criminal defendant must be committed to life imprisonment even when he or she is probably innocent of the qualifying conduct. This defendant will spend the rest of his life in prison because he cannot muster clear and convincing proof that he was innocent of an act allegedly committed a quarter of a century ago. Because I would join the Sixth Circuit in holding that the statute imposes an unconstitutional burden of proof on the defendant, I respectfully dissent.

## I

Congress enacted the so-called "three strikes" statute, 18 U.S.C. § 3559(c)(1), as part of a laudable attempt to punish and deter violent recidivist offenders. But Congress' grasp exceeded its intended reach. The legislative history of the statute clearly evinces the intent to reach only "serious violent felonies."[1] The statute nevertheless includes non-violent felonies as qualifying offenses. It does so by categorically counting as "strikes" certain non violent crimes, such as conspiracy to commit robbery, and others that may or may not involve a violent act, such as robbery.[2]

---

1. Indeed, the enumerated crimes are denominated as "serious violent felonies." *See* 18 U.S.C. § 3559(c)(2)(F). The House Report on the bill containing the three strikes legislation stated:

 H.R. 3981 addresses three problems in the criminal justice system. The first problem is that *violent crime* in America has reached an unacceptable level. In 1992, there were 1,982,274 *violent crimes,* 23,760 of which were *murders* .... H.R. 3981 ... is intended to take the Nation's *most dangerous recidivist criminals* off the streets and imprison them for life.

 H.R. Rep. 103–463, 1994 WL 107574, at *11 (1994) (emphasis added).

 The report further noted testimony received by the subcommittee about the brutal murder of Polly Klaas, a thirteen-year old Petaluma, California girl; the rape of state Senator Susan Sweetser; the savage rape and fatal strangulation of nineteen-year old Stephanie Schmidt; and the execution-style murder of

Richard Adams. *See id.* at *16; *see also* 1994 WL 222776, at *5 (1994) (statement of Representative Livingston noting that "[The three strikes law] does apply to violent felons-and only violent felons."); 140 Cong. Rec. S12393–94 (daily ed., Aug. 24, 1994) (statement of Representative Dorgan in support of the three strikes law citing the murders of Patricia Lexie and James Jordan). The entire thrust of the legislative history is toward the reduction of serious violent crime.

2. In 18 U.S.C. § 3559(c)(2)(F), Congress defines the term "serious violent felony" for the purpose of § 3559(c)(1) to include "(i) a Federal or State offense, by whatever designation and wherever committed, consisting of ... *robbery* (as described in section 2111, 2113, or 2118); ... or *attempt, conspiracy, or solicitation to commit* any of the above offenses ...." (emphasis added).

To conform the statute's broad reach to the Congressional aim of punishing only the most serious and violent recidivist offenders, the statute allows defendants to escape the sweeping net cast by inclusion of non-violent felonies. The defendant can only do so, however, if he or she can prove *by clear and convincing evidence* that the crime did not involve a threat or use of a dangerous weapon and did not result in serious bodily injury. *See* § 3559(c)(3)(A).[3]

Thus, under the three strikes statute, crimes such as purse-snatching and pickpocketing may qualify as "serious violent felonies" and "strikes" because those crimes may be defined as "robbery" under applicable state law. A defendant can avoid a life sentence for three such convictions only by proving by clear and convincing evidence that no serious bodily injury occurred and that there was no threat or use of a dangerous weapon. When the convictions are over twenty years old, as they are in this case, it is difficult to muster even a preponderance of evidence, much less clear and convincing proof. Witnesses to such an ancient event are often gone; physical evidence has almost certainly disappeared. The only proof generally available is the convicted defendant's own words which, in the real world, are rarely clear and convincing at sentencing.

In the case of common purse-snatching by use of a knife to cut the strap, no defense likely would be available because the crime would involve use of a dangerous weapon. If one believes the legislative history, Congress did not intend to send purse-snatchers, pick-pockets, and bread thieves like Jean Valjean[4] to prison for their natural lives, but that is the consequence of this statute.

This case provides a perfect paradigm of the problem. Kaluna's instant offense counted as one strike. A theft of the E.J. Marshal jewelry store with a knife counted as the second. The third "strike" that committed Kaluna to a life in prison was a robbery of Bill's Bakery in Honolulu.[5] Unlike Jean Valjean, Kaluna did not steal bread from the bakery; rather, he removed $245 from the till. After he was apprehended, Kaluna pled guilty to second-degree robbery pursuant to Haw.Rev. Stat. § 708–841 (1975). The difference between robbery in the first degree and robbery in the second degree in Hawaii is the presence or absence of a dangerous weapon. *See* Haw.Rev.Stat. §§ 708–840 to – 841; *State v. Halemanu*, 3 Haw.App. 300, 650 P.2d 587, 592 (1982); *see also* Haw. Rev.Stat. § 708–841 commentary (1993). For this offense, Kaluna was sentenced to six month's probation; the sentencing court did not deem the crime worthy of any prison time.

Under the three strikes law, the Bill's Bakery robbery qualified as a "strike" because it was a conviction for second-degree robbery, and thus a "State offense, by whatever designation and wherever committed, consisting of . . . robbery" under 18 U.S.C. § 3559(c)(2)(F). To avoid classification of the offense as a "strike," Kaluna had to show by clear and convincing proof that the Bill's Bakery robbery did not involve a threat or use of a dangerous weapon and did not result in serious bodily

---

3. That section provides in relevant part that "[r]obbery . . . shall not serve as a basis for sentencing under this subsection if the defendant establishes by clear and convincing evidence that—(i) no firearm or other dangerous weapon was used in the offense and no threat of the use of a firearm or other dangerous weapon was involved in the offense and (ii) the offense did not result in death or serious bodily injury (as defined in section 1365) to any person." 18 U.S.C. § 3559(c)(3)(A).

4. Valjean was convicted of "housebreaking and robbery" for stealing a loaf of bread. Victor Hugo, *Les Miserables,* 93 (Norman Denny trans., Penguin Books 1976) (1862). He served nineteen years for the crime, counting sentence extensions for attempted escape.

5. The district court noted several other robberies might qualify as "strikes," but declined to make that ultimate finding, relying instead on the three identified crimes.

injury. Thus, Kaluna qualified for life imprisonment because he was guilty of second-degree robbery, but could save himself by proving by clear and convincing evidence that he was not guilty of first-degree robbery.

It may be unique in our criminal law that one may only avoid the impact of one statute by proving oneself innocent of another, but that is the import of the three strikes law. In this case, Kaluna chose to show he was not guilty of first-degree robbery by referencing his plea agreement, in which he admitted only that he was guilty of second-degree robbery. Normally, because the government put on no proof that he was guilty of first-degree robbery, his defense probably would be sufficient. But because Kaluna bore the burden of proof, and his plea alone was not "clear and convincing," the district court imposed the strike.

The result is that Kaluna, who pled guilty to the second-degree robbery of Bill's Bakery, was sentenced as if convicted of first-degree robbery. *See Richardson v. United States*, 526 U.S. 813, 119 S.Ct. 1707, 1712, 143 L.Ed.2d 985 (1999) ("Where sentencing is at issue, the judge, enhancing a sentence in light of recidivism, must find a prior individual conviction ... which means that an earlier fact-finder ... found that the defendant *committed the specific earlier crime*") (emphasis added); *Taylor v. United States*, 495 U.S. 575, 601–02, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990) (noting, in the context of considering what burglaries qualify as predicate offenses under 18 U.S.C. § 924(e), that "[I]f the guilty plea to a lesser, nonburglary offense was the result of a plea bargain, it would seem unfair to impose a sentence enhancement as if the defendant had pleaded guilty to burglary."). Kaluna was thus deprived of the opportunity to have a jury assess the "facts that alter the congressionally prescribed range of penalties to which a criminal defendant is exposed." *Jones v. Unit-*

*ed States*, 526 U.S. 227, 119 S.Ct. 1215, 1229, 143 L.Ed.2d 311 (1999) (Scalia, J., concurring).

## II

Of course, that a statute may have harsh results is no cause to declare it unconstitutional. But a sentencing process, like a criminal trial, must satisfy the requirements of due process. *See Gardner v. Florida*, 430 U.S. 349, 358, 97 S.Ct. 1197, 51 L.Ed.2d 393 (1977) (plurality). Due process at sentencing typically requires that the government prove enhancing factors by a preponderance of the evidence. *See McMillan v. Pennsylvania*, 477 U.S. 79, 91, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986); *United States v. Restrepo*, 946 F.2d 654, 658–59 (9th Cir.1991) (en banc). Moreover, the "preponderance" standard is not constitutionally adequate in all sentencing cases. Rather, due process requires a higher standard of proof where the factor to be proved would have "an extremely disproportionate effect on the sentence relative to the offense of conviction." *Restrepo*, 946 F.2d at 659; *see also Witte v. United States*, 515 U.S. 389, 403, 115 S.Ct. 2199, 132 L.Ed.2d 351 (1995) (noting that the defendant did not argue that the court's consideration of the sentencing factor was "so significant, that [it became] 'a tail which wags the dog of the substantive offense'") (quoting *McMillan*, 477 U.S. at 83–84, 106 S.Ct. 2411); *United States v. Townley*, 929 F.2d 365, 370 (8th Cir.1991) (recognizing the heightened due process concerns where the sentencing factor tail wags the dog of the substantive offense).

Under narrowly circumscribed conditions, the burdens of production and proof may be shifted to a defendant in a criminal case. For example, where a defendant relies on an exception to a criminal statute, he generally bears the burden of establishing and showing that he comes within that exception.[6] *See United States v. Graven-*

---

6. The panel opinion persuasively argues that the "exception" in this case is actually a sen-

*meir,* 121 F.3d 526, 528 (9th Cir.1997); *United States v. Freter,* 31 F.3d 783, 788 (9th Cir.1994); *Walker v. Endell,* 850 F.2d 470, 472 (9th Cir.1987). None of the "statutory exception" cases impose a "clear and convincing" burden of proof on the defendant, however. Indeed, in some circumstances, the burden of proof may not be shifted to the defendant at all. *See Gravenmeir,* 121 F.3d at 528 (noting that the burden ought not to be shifted to the defendant when it is "overbearing").[7]

"The function of a standard of proof, as that concept is embodied in the Due Process Clause and in the realm of factfinding, is to instruct the factfinder concerning the degree of confidence our society thinks he should have in the correctness of factual conclusions for a particular type of adjudication." *Addington v. Texas,* 441 U.S. 418, 423, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979) (citations and internal quotation marks omitted). As the government increases a defendant's burden of proof, that defendant concomitantly shoulders an ever-increasing risk of an erroneous decision. *See id.* At some point, placing a particular burden of proof on a criminal defendant violates the Due Process Clause. The question presented by this case is whether, in placing a "clear and convincing" burden of proof on defendants who seek to invoke section 3559(c)(3), Congress has reached that juncture.

The Supreme Court articulated the due process principles by which courts should examine burdens of proof in *Cooper v. Oklahoma,* 517 U.S. 348, 116 S.Ct. 1373, 134 L.Ed.2d 498 (1996). In *Cooper,* the Court struck down an Oklahoma statute creating a presumption that a criminal defendant was competent to stand trial unless he proved his incompetence by clear and convincing evidence. *See id.* at 368–

69, 116 S.Ct. 1373. Two state-employed psychologists had offered conflicting opinions regarding the defendant's competence. *See id.* at 351, 116 S.Ct. 1373. Although the trial judge noted that the question was a close one, he ultimately concluded that the defendant had not carried his burden by "clear and convincing" evidence and would therefore be tried. *See id.* at 351–52, 116 S.Ct. 1373. In holding the statute unconstitutional, the Supreme Court rejected the notion that a state could "proceed with a criminal trial after the defendant has demonstrated that he is more likely than not incompetent." *Id.* at 355, 116 S.Ct. 1373. The Court's analysis focused on two main inquiries. First, the Court considered the historical and contemporary practices of most jurisdictions to determine whether the heightened standard of proof "vindicate[d] the State's interest in prompt and orderly disposition of criminal cases," or offended "a principle of justice that is deeply rooted in the traditions and conscience of our people." *Id.* at 360–62, 116 S.Ct. 1373 (citations and internal quotation marks omitted). Second, the Court asked whether an evaluation of the risks inherent in requiring a clear and convincing standard of proof led to the conclusion that the practice was consistent with due process. *See id.* at 362–63, 116 S.Ct. 1373.

Addressing the first question, the Court observed that almost all other jurisdictions applied a standard that was more protective of a defendant's rights than was Oklahoma's "clear and convincing" rule, providing evidence that the rule did, in fact, violate a deeply-rooted principle of justice. *Id.* at 360–62, 116 S.Ct. 1373.

Turning to the second question, the Court explained that the risk of error was very high and that the consequences of

---

tencing "element," rebutting the majority's analysis of this question. *See United States v. Kaluna,* 152 F.3d 1069, 1077–80 (9th Cir.), *withdrawn* 161 F.3d 1225, 1225–26 (9th Cir. 1998).

**7.** It is the doubtful that the sentencing scheme imposing a life sentence would pass constitutional muster even if the defendant's burden were a preponderance. *See United States v. Harrison–Philpot,* 978 F.2d 1520, 1523 (9th Cir.1992); *Restrepo,* 946 F.2d at 659–60; *see also Kaluna,* 152 F.3d at 1080–82.

error for the defendant were dire. *See id.* at 363–64, 116 S.Ct. 1373. The risk of error was high because, unlike a preponderance standard, which would affect only a narrow class of cases in which the evidence on either side was equally balanced, a clear and convincing standard would affect a class of cases in which the defendant had demonstrated that, more likely than not, he was incompetent. *See id.* The consequences of error would be dire because, if the court erroneously found Cooper competent, his inability to assist in his own defense would deny him a fair trial. *See id.* at 364, 116 S.Ct. 1373. By contrast, the Court noted, the "injury to the State of the opposite error-a conclusion that the defendant is incompetent when he is in fact malingering-is modest." *Id.* at 365, 116 S.Ct. 1373.

Ultimately, the Court concluded that, in the context of a competency determination, the Due Process Clause would not permit a state to allocate to a criminal defendant "the large share of the risk which accompanies a clear and convincing evidence standard." *Id.* at 366, 116 S.Ct. 1373; *see also McMillan,* 477 U.S. at 83–84, 106 S.Ct. 2411 (affirming the Pennsylvania Supreme Court's upholding of Pennsylvania's Mandatory Minimum Sentencing Act where the Pennsylvania Supreme Court had reasoned that the risk of error under the Act was slight).

The Court recently held in *United States v. Watts,* 519 U.S. 148, 117 S.Ct. 633, 136 L.Ed.2d 554 (1997) (per curiam), that an acquittal in a criminal case did not preclude the sentencing judge from enhancing a sentence based on the facts underlying the alleged crime. *Watts* reaf-

firmed that the "preponderance standard at sentencing generally satisfies due process" but noted that there was a divergence among the circuits as to whether "relevant conduct that would dramatically increase the sentence must be based on clear and convincing evidence." *Id.* at 156, 117 S.Ct. 633.

18 U.S.C. § 3559 turns these principles on their head. It places a negligible burden of proof on the prosecution,[8] but forces the defendant to shoulder one of the highest burdens extant in the law: proof by clear and convincing evidence. As one court explained, "[i]n order to be 'clear and convincing,' evidence must be of 'extraordinary persuasiveness.'" *State v. Johnson,* 131 Or.App. 561, 886 P.2d 42, 44 (1994).[9] Thus, rather than embracing the notion of "shared risk" as articulated in *Cooper* and as approved in *McMillan,* the statute imposes a Sisyphean evidentiary weight on the defendant. The effect on this case is not trivial. Indeed, the standard of proof employed will probably determine whether Kaluna will spend the rest of his life in prison. But that is what the statute commands. Placing a "clear and convincing" burden on the defendant means that he *must* be deemed guilty of a qualifying offense even when it is more likely than not that he is innocent.

Such a scheme cannot pass constitutional muster. First, the Supreme Court has never held that a defendant may, consistent with due process, assume a clear and convincing standard of proof as to matters which "dramatically increase the sentence." *Watts,* 519 U.S. at 156, 117 S.Ct. 633. In fact, the salient question in sentencing cases has been not whether the

---

**8.** Indeed, the government argues that § 3559 puts no evidentiary burden on the government at all. Rather, its only duty is, as the government put it at oral argument, "to get the ball rolling" by producing certified copies of the past second-degree robbery convictions. Therefore, it claims it need not prove by even a preponderance of evidence that three serious violent felonies have been committed.

**9.** As we noted in *Eastwood v. National Enquirer, Inc.,* imposing a "clear and convincing" evidentiary standard is "a means of protecting society from the consequences of grave decisions too lightly reached." 123 F.3d 1249, 1252 n. 5 (9th Cir.1997). This statute inverts this logic by imposing grave consequences unless clear and convincing proof is tendered.

defendant, but rather whether the prosecution should be held to a higher burden of proof. *See, e.g., McMillan,* 477 U.S. at 83, 106 S.Ct. 2411; *Restrepo,* 946 F.2d at 659–60; *United States v. Lombard,* 72 F.3d 170, 176–80 (1st Cir.1995); *Witte,* 515 U.S. at 402–04, 115 S.Ct. 2199; *Townley,* 929 F.2d at 370; *United States v. Trujillo,* 959 F.2d 1377, 1382 (7th Cir.1992); *United States v. Kikumura,* 918 F.2d 1084, 1100–01 (3d Cir.1990).

Where, as here, an enhancement provision results in a great disparity between the sentence for the crime charged in the indictment and the sentence imposed, courts have placed a higher burden *on the prosecution.* As the Third Circuit has noted, "[i]n this extreme context, ... a court cannot reflexively apply the truncated procedures that are perfectly adequate for all of the more mundane, familiar sentencing determinations." *Kikumura,* 918 F.2d at 1101. Thus, precedent suggests that the high burden of proof placed here on the defendant cannot stand.

Second, the statute creates a grave risk of error. The "more stringent the burden of proof a party must bear, the more that party bears the risk of an erroneous decision." *Cooper,* 517 U.S. at 362, 116 S.Ct. 1373 (quoting *Cruzan v. Director, Mo. Dept. of Health,* 497 U.S. 261, 283, 110 S.Ct. 2841, 111 L.Ed.2d 224 (1990)). Because the sentence enhancement is founded on historical events, the probability of an erroneous decision under section 3559(c)(3)(A) is substantially higher than the corresponding risks in either *Cooper* or *McMillan.* In *Cooper,* the issue was the defendant's present competency, one which could be assessed from the evidence at hand. 517 U.S. at 350, 116 S.Ct. 1373. In *McMillan,* the sentencing factor was visible possession of a firearm in the commission of the charged crime, again a fact which could be readily ascertained within the case context. 477 U.S. at 84, 106 S.Ct. 2411.

Here, by contrast, the prosecution seeks to use the almost twenty-five year old conviction for the second-degree robbery of Bill's Bakery as Kaluna's "third strike." In order to avoid a life sentence, Kaluna must assemble clear and convincing proof that he did not use, or threaten to use, a firearm or another dangerous weapon in a crime to which he pled guilty over two decades ago. That task would be formidable under a mere preponderance standard; it becomes a near-futile exercise under the constraint of producing "clear and convincing" proof. The uncertainties inherent in relying on a decades-old, undeveloped, and ambiguous record underscore the substantial risk of the court making an erroneous determination based solely on the high burden of proof imposed on the defendant.

Finally, the consequences of an erroneous determination are severe. Even if Kaluna were able to show that, more likely than not, he did not use or threaten to use a firearm or other dangerous weapon in the Bill's Bakery robbery, the statute would mandate life imprisonment. The district court imposed a life sentence on Kaluna based entirely on the standard of proof, specifically finding that Kaluna had failed to meet his burden "to preclude the use of any of his convictions." The similarities with *Cooper* are obvious: for Kaluna and those in like situations, the risk of error is high, and the consequences extreme.

Thus, notwithstanding the less stringent constitutional standards which govern sentencing, *see Restrepo,* 946 F.2d at 658–59, 18 U.S.C. § 3559 violates due process. Congress may not, as it has sought to do here, "advance the objectives of its criminal laws at the expense of the accurate factfinding owed to the criminally accused who suffer the risk of nonpersuasion." *McMillan,* 477 U.S. at 102, 106 S.Ct. 2411 (Stevens, J., dissenting). Rather, the values underlying procedural due process-particularly those of accuracy and the appearance of fairness-require a more equal distribution of the risk than is contemplated by this statute.

The Sixth Circuit has recently considered these matters and reached the same conclusion. *See United States v. Gatewood,* 184 F.3d 550, 553–55 (6th Cir.1999). As Judge Merritt put it: "The defendant's burden of proof under § 3559(c)(3)(A) of the three-strikes statute thus fails to exhibit 'fundamental fairness' as defined in *Cooper*'s Due Process analysis because it imposes such a high risk and cost of error on defendants." *Id.* at 554–55.

For these reasons, the statute's imposition of a clear and convincing burden of proof unconstitutionally deprives defendants of due process of law.

### III

The majority goes to some lengths to elude the crucial question of whether a clear and convincing evidentiary burden may be constitutionally placed on a criminal defendant at sentencing. To avoid that decision, the majority conducts a new analysis of crimes upon which the district court did not rely,[10] and makes the factual determination that the defendant would not have satisfied an adjusted burden of proof.[11] Indeed, the majority goes on to make the affirmative finding that "Defendant would lose as a matter of law even if the government bore the burden of proof." Those are findings not made by the district court, and the crimes cited by the majority were not the basis of the district court's sentencing decision.

Except in cases of de novo review, it is generally improper to decide issues that were not the basis of the appealed decision. *See Peralta v. Heights Med. Ctr.,* 485 U.S. 80, 86, 108 S.Ct. 896, 99 L.Ed.2d 75 (1988). This is especially so in the context of sentencing. As former Chief Judge Wallace has observed, "ordinarily the district judge on remand, who is more fully advised by specific arguments of counsel, is better situated to make an informed determination than is an appellate court answering its own hypothetical questions." *United States v. Jenkins,* 884 F.2d 433, 441 (9th Cir.1989) (Wallace, J., concurring). Indeed, "[i]n cases where an appellate court determines that an improper burden of proof was applied, the normal course is to remand so that evidence can be reexamined in light of the appropriate standard." *Mason v. Vasquez,* 5 F.3d 1226, 1227 (9th Cir.1993) (Pregerson, J., dissenting).

Thus, the doctrine of harmless error is misapplied. The harmless error doctrine supports the fact-finder; it is not the function of the doctrine to allow appellate courts to make new findings. In support of its decision to apply the "three strikes" statute, the district court specifically identified three robberies. As to those robberies, she determined preliminary qualification, assessed the defendant's proffered evidence under the statutory standard, then determined statutory eligibility. The defendant was sentenced on the basis of those findings. It is not within our province to sentence the defendant based on considerations outside the sentencing deci-

---

**10.** The district court noted that the statute did not "preclude the use" of several other prior crimes. However, the court recognized that "this finding does not automatically authorize use of all three prior occasions of conviction for sentencing under 18 U.S.C. § 3559(c)(1)." The court only conducted a full analysis of two prior offenses, finding that those convictions "permit their use as the two prior serious violent felony convictions required for sentencing under the [Act]." Thus, the court reasoned, "[i]t is therefore unnecessary to conduct such an analysis on the other convictions qualifying as serious violent felonies here."

**11.** Referring to the question of whether the statute imposes an unconstitutionally high burden of proof, the majority holds that "[w]e need not and do not reach that issue, because defendant failed to establish the affirmative defense even under the lowest standard of proof available, preponderance of the evidence." Supporting this rationale, of course, is the doubtful proposition that the sentencing scheme imposing a life sentence would pass constitutional muster even if the defendant's burden were a preponderance. *See Kaluna,* 152 F.3d at 1080–82.

sion. Courts of Appeals are not sentencing courts.

Our charge, even if we were to apply a harmless error standard, is to assess whether the constitutional error is harmless beyond a reasonable doubt. *See Chapman v. California*, 386 U.S. 18, 23–24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). In this case, one cannot say that the evidence concerning the Bill's Bakery robbery is so compelling that the constitutional error was harmless beyond a reasonable doubt. Indeed, the evidence is arguably in equipoise. Accordingly, the proper course is to determine the correct burden of proof, and remand for resentencing. At that point, the district court might chose to conduct a full analysis of other potentially qualifying crimes. However, it is beyond our dominion to do it in the first instance.

The majority seems to imply that a criminal defendant lacks standing to challenge the constitutionality of the statute under which he or she is sentenced, absent a preliminary evidentiary showing. If so, this is incorrect. As a criminal defendant, Kaluna may challenge the statute he is charged with violating and under which he is sentenced. *See United States v. Wright*, 117 F.3d 1265, 1274 n. 18 (11th Cir.1997) ("as a criminal defendant, Wright has 'standing' to assert a constitutional challenge to the statute he is charged with violating"), *vacated in part on other grounds by* 133 F.3d 1412 (11th Cir.1998). Every time the Supreme Court has considered a constitutional challenge to an evidentiary burden, it has proceeded to the

merits without imposing an evidentiary predicate. For example, in the seminal case of *Patterson v. New York*, the defendant challenged on due process grounds a New York law requiring criminal defendants to prove the affirmative defense of extreme emotional disturbance by a preponderance of the evidence. 432 U.S. 197, 198–99, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977). The defendant argued that this improperly shifted the burden of persuasion from the prosecutor to the defendant. *See id.* at 200–01, 97 S.Ct. 2319. The Court did not preliminarily assess whether the defendant had met his burden, or whether the prosecution would have met its burden had the defendant's argument prevailed; instead, the Court addressed the defendant's challenge squarely. *See id.* at 205–06, 97 S.Ct. 2319.

Historically, the Court has addressed defendants' allegations of unconstitutional burden-shifting immediately and directly without the evidentiary assessment that the majority requires.[12] Likewise, in its recent opinion on the very question at hand, the Sixth Circuit did not first require the defendant to tender a quantum of proof before considering his constitutional challenge. *See Gatewood*, 184 F.3d at 552–54 (directly addressing the defendant's challenge without requiring an evidentiary predicate and also noting that "[t]he defendant provided no proof that any of his previous robbery felonies were 'nonqualifying.' ").[13] Courts do not generally require a criminal defendant to first

---

12. *See, e.g., Parke v. Raley*, 506 U.S. 20, 113 S.Ct. 517, 121 L.Ed.2d 391 (1992) (considering Kentucky's burden-shifting persistent felony offender sentencing statute on the merits without requiring defendant to meet an evidentiary predicate); *Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979) (considering improper burden-shifting jury instruction without requiring defendant to show the shifted burden would have made a difference); *Mullaney v. Wilbur*, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975) (considering on the merits without an evidentiary predicate a constitutional due process challenge to Maine's statute requiring a de-

fendant to prove that he acted in the heat of passion on sudden provocation in order to reduce the homicide to manslaughter); *Leland v. Oregon*, 343 U.S. 790, 72 S.Ct. 1002, 96 L.Ed. 1302 (1952) (addressing a defendant's challenge to an Oregon statute requiring a criminal defendant to establish the defense of insanity beyond a reasonable doubt without first requiring him to tender any evidence).

13. Thus, the majority creates a procedural inter-circuit conflict with the Sixth Circuit, as well as one on the merits.

prove his or her case before deciding what burden of proof ought to be shouldered.

Thus, although acting in good faith, the majority attempts to finesse an issue that it should not avert. The adage that constitutional questions ought to be avoided is certainly still sound advice. However, this constitutional question is squarely and fairly presented. It is founded on the findings that form the basis of the district court decision. Assembling new findings on appeal and conducting hypothetical analyses on the reconstituted decision stretches our domain too far.

Further, by relying on harmless error, the majority implies that there is error. In so doing, it does a disservice to district court judges, who must labor to apply the statute, by failing to articulate the correct standard. Rather than deferring the question for another day, mandating an imposing evidentiary predicate makes the issue effectively unreviewable in the future. Thus, the appropriate course is to decide the question presented by the parties, and commit the sentencing decision to the capable hands of the district court.

### IV

Few would quarrel with the notion that recidivist violent felons should receive stiff punishment, and Bryan Kaluna is no Jean Valjean, as the majority has ably shown. Yet, before, as Victor Hugo put it, "society withdraws itself and gives up a thinking being forever," we must assure ourselves that the defendant has been accorded due process of law in sentencing. Requiring a life sentence when the defendant is probably innocent of the qualifying act does not comport with due process. Thus, I would join the Sixth Circuit and hold the "clear and convincing" burden of proof imposed on defendants unconstitutional.

I respectfully dissent.